## Commonwealth v. Hughes

*Robert E. Farr*, District Attorney, and *Frank P. Lawley*, Deputy Attorney General, for Commonwealth.

*Elmer E. Harter* and *Linton & Walrath*, for defendant.

WEBB, P. J., March 4, 1960. — Defendant, Roy Hughes, was convicted of violation of the State Adverse Interest Act of July 19, 1957, P. L. 1017, 71 PS §776.1. The matter is now before the court on a motion for a new trial and a motion in arrest of judgment.

Defendant, Roy S. Hughes, was in November 1958, employed as a superintendent of the Tioga County Maintenance Department, Pennsylvania Department of Highways. On November 13, defendant called upon one R. J. Clark at Smethport, who defendant had learned had a bulldozer for sale. After some discussion Clark, at the request of the defendant, signed several papers in blank, which were later determined to be an equipment rental agreement and group time sheets. By the terms of the equipment rental agreement, as

filled out, Clark purported to lease the bulldozer to the Commonwealth. It was disputed whether Mr. Clark signed them on the first day defendant came to see him, November 13, 1958, or a few days later, November 17, 1958, as defendant maintains. Clark testified that the question of the sale of the bulldozer was discussed on November 13, 1958, when Hughes first came to see him, while Hughes testified that the sale was not mentioned until November 18, 1958. On November 18, 1958, Clark did agree to sell the bulldozer for $4,500. On November 19, 1958, Hughes borrowed from the Tioga County Savings and Trust Company in Wellsboro $5,500 and gave as security a bulldozer. On the afternoon of that same day Hughes returned to Smethport and paid Clark $4,500 in cash for the bulldozer. At that time Clark gave to him a bill of sale, leaving the name of the vendee blank. Defendant testified that the title to the bulldozer was to remain in Clark until the termination of the contract on April 30, 1959.

Defendant Hughes arranged for a man to drive the bulldozer from Smethport to Tioga County and paid him for this service. He arranged for the insurance on the bulldozer, which was taken in Clark's name and the policy mailed to Clark, and defendant paid the premium. He arranged for all repairs that had to be made and paid for them. He arranged for the bulldozer operator and paid the operator himself. All these things defendant testified he was doing for Mr. Clark. The bulldozer was used all of the winter and all of the spring by the Highway Department and operated by the son of defendant.

All of the rental checks were made out in the name of Mr. Clark. All of the checks came to the Highway Department office in Wellsboro. There were 12 checks in all. Ten of them were endorsed by Mr. Clark. Four of them went to the Freeborn Equipment Company for

repairs, two were cashed in the presence of defendant and the money given to him, three of them were deposited by defendant in the Tioga County Savings and Trust Company to pay off the note of defendant for $4,500, and one was deposited by defendant at the Carson Finance Company to pay off another note of defendant, and the balance returned to defendant. Mr. Clark got none of the proceeds of any of these checks. The last two checks were not endorsed by Clark or were ever cashed.

## Discussion

The pertinent parts of the State Adverse Interest Act of July 19, 1957, P. L. 1017, provided as follows:

In section 5, 71 PS §776.5:

"No State employe shall have an adverse interest in any contract with the State agency by which he is employed."

Section 2 of the act, 71 PS §776.2, contains the following definitions:

"(4) 'State Employe.' An appointed officer or employe in the service of a State agency, and who receives a salary or wage for such service.

"(5) 'Contract.' A contract or arrangement for the acquisition, use or disposal by a State agency of services or of supplies, materials, equipment, land or other personal or real property. The term 'contract' shall not mean an agreement between the Commonwealth or a State agency as one party and a State advisor, consultant or employe as the other party, concerning his expense, reimbursement, fee, salary, wage, retirement benefit, tenure or other matters touching his personal service to the Commonwealth or State agency.

"(6) 'Have an Adverse Interest.' Be the party to a contract, as herein defined, other than the Commonwealth or a State agency or be a stockholder, partner,

member, agent, representative or employe of such party."

Counsel has assigned seven reasons why either a new trial should be granted or judgment arrested. We will discuss them seriatim.

*The Commonwealth failed to prove defendant was a State employe.*

It is defendant's contention that the Commonwealth did not prove defendant was a State employe as defined by the act. Specifically, defendant argues that the Commonwealth did not prove that defendant received wages or a salary.

The witness, Carl R. Hutchinson, District Maintenance Engineer for the Pennsylvania Department of Highways, testified that Mr. Hughes, defendant, was *employed* in April 1955, by the Pennsylvania Department of Highways as superintendant of the Tioga County Maintenance Department and was acting in such capacity in November 1958. He further testified to the best of his knowledge that the Department of Highways is an agency of the Commonwealth. It is true that Mr. Hutchinson was never specifically asked whether Mr. Hughes received any wages or a salary.

If he was employed by the Commonwealth, by the Department of Highways, he was an employe of the Department of Highways. Webster's New International Dictionary, Second Edition, defines an employe as "one employed by another; one who works for wages or salary in the services of an employer." It is obvious from this definition that if he was an employe, he received compensation for his services. The jury could easily infer from the nature of his position that it carried with it a salary, even without specific proof to that effect.

At the conclusion of the Commonwealth's case defendant demurred to the evidence. However, he did not specifically assign as a reason the fact that there

was no direct evidence of his receiving a salary as the grounds for a demurrer. The demurrer was overruled by the court. However, in defendant's own testimony, on page 304 of the record, there was evidence that he did receive wages or a salary:

"Q. . . . Will you relate to the Court and jury where that payment—the money for that payment came from?

"A. This money came from my own money. Out of my pocket—*my wages.*"

And again, on page 305:

"A. I had some people that owed me money and I collected it, with the money that I had of my own.

"Q. The compensation of persons paying you off, the Department, they owed you, *and your salary?*

"A. Yes."

The Superior Court of Pennsylvania, in the case of Commonwealth v. Marino, 142 Pa. Superior Ct. 327, at page 331, said:

"But an appeal may then be taken from the judgment of sentence, and if the decision overruling the demurrer was erroneous and the demurrer should have been sustained, the judgment will be reversed and the defendant discharged, unless *the evidence produced by the defendant in his own behalf, or the rebuttal thereto by the Commonwealth, in connection with the evidence in the case when the demurrer was entered, will support the verdict of guilty.*"

To the same effect:

"There are no presumptions against a person accused. The essential elements of the crime cannot be presumed or left to inference or conjecture; and, to justify a conviction, the evidence must establish every essential element of the offense charged. *The testimony of accused testifying in his own behalf may be considered for the purpose of establishing an element of the offense charged*": 23 C. J. S. §918, p. 187.

We are of the opinion that there is sufficient evidence in this case to enable the jury to find he was a State employe within the meaning of the definition of the Adverse Interest Act.

*The Commonwealth failed to prove defendant had an adverse interest.*

*Defendant was not a party to the contract.*

These two reasons assigned by defendant are all of one piece and we will dispose of them together.

Defendant submits: (a) That the definition of adverse interest presupposes that the alleged conduct of defendant must have taken place at the same time with or be coexistant with the execution of the contract; and (b) that defendant must be the nominal party to the contract. We find no merit in either contention. The Adverse Interest Act provides in paragraph 5: "No State employe shall *have* an adverse interest in any contract with the State agency by which he is employed." There is nothing in this act that limits the time when such adverse interest may be acquired. All the act says is that a State employe shall not *have* an interest in a contract. This means that a State employe shall not have an interest in a contract at any time during the life of the contract. This is the only common sense way this section of the act could be construed.

There is nothing in this act that states that the State employe must be a nominal party to the contract to have an adverse interest. A contract is defined in the act as a contract or arrangement for the acquisition, use or disposal by a State agency of services or of supplies, materials, equipment, land or other personal or real property. It is true under the evidence that defendant did not sign the equipment rental agreement for the leasing of a bulldozer to the State. There is, however, ample evidence from which the jury could find that this rental agreement was in fact and effect

assigned to defendant. That being the case he would be the real party to the contract, if not the nominal one. He had possession of the bulldozer, he received all the income for its rental from the Highway Department, he made all the arrangements for repairs and he employed the operator for it. To construe this act otherwise would make it meaningless and of no effect. If it were construed as defendant contends, all any State employe would have to do would be to have the contract made out in the name of someone else and still reap the benefits . . .

### Order

And now, March 4, 1960, in accordance with the foregoing opinion, the motion of defendant for a new trial and in arrest of judgment is overruled, and judgment is directed to be entered on the verdict; the district attorney is directed to call defendant for sentence.