546 A.2d 147

Federation of State Cultural and Educational Professionals, Pennsylvania State Education Association, Ross Blust and Geoffrey S. Lucas, Petitioners *v.* Commonwealth of Pennsylvania, Department of Education and Office of General Counsel, Commonwealth of Pennsylvania, Respondents.

Argued June 15, 1988, before President Judge CRUMLISH, JR., and Judges CRAIG, MACPHAIL, DOYLE, BARRY, COLINS and MCGINLEY.

*Mark P. Widoff*, with him, *Mary Catherine Frye, Widoff, Reager, Selkowitz & Adler, P.C.*, and *Lynne Wilson*, for petitioners.

*Joel M. Ressler*, Senior Deputy Attorney General, with him, *John G. Knorr, III*, Chief Deputy Attorney General, Chief of Litigation Section, and *LeRoy S. Zimmerman*, Attorney General, for respondents.

OPINION BY JUDGE MACPHAIL, August 22, 1988:

Petitioners seek summary judgment in an action for declaratory judgment filed in our original jurisdiction. We will enter a declaratory judgment in their favor.

There appears to be no material factual dispute in this case. Petitioners Blust and Lucas are employees of the Department of Education (Department). Blust is an Educational Measurement and Evaluation Supervisor; Lucas is an academic counselor at the Huntingdon State Correctional Institution.

Blust filed a supplemental employment request with the Department pursuant to Management Directive No. 515.18 issued by the then Secretary of Administration, seeking permission to teach a night course at Temple University's downtown Harrisburg facility and at Pennsylvania State University's Harrisburg Campus. Lucas sought permission to work at night as an academic counselor for an adult literacy program conducted by the Huntingdon County Child and Adult Development Corporation.

Because the Department had contracts with Temple University, Pennsylvania State University, and Huntingdon County Child and Adult Development Corporation, both requests were denied by the Department on the basis that the supplemental employment would, in the opinion of the Department, violate the State Adverse Interest Act (Act), Act of July 19, 1957, P.L. 1017, *as amended,* 71 P.S. §§776.1-776.8.

Neither Blust nor Lucas had any role in negotiating, recommending, influencing or implementing the Department's contracts with Pennsylvania State University, Temple University or Huntingdon County Child and Adult Development Corporation.

Petitioners seek a declaratory judgment from this Court holding that the Act does not prohibit state employees from engaging in after-hours supplemental employment where no actual adverse interest exists, or, in the alternative, a judgment declaring that the Act as applied to Blust and Lucas is unconstitutional, because (1) it violates the Fourteenth Amendment to the Constitution of the United States and Article I, Section 1 of the Constitution of Pennsylvania; (2) it is unconstitutionally vague; and (3) it violates the due process clauses of the United States and Pennsylvania Constitutions.

First adopted in 1957 and last amended in 1982, the Act provides for an automatic forfeiture of state employ-

ment and criminal penalties for violations of its provisions.

> Section 5 of the Act, 71 P.S. §776.5 provides that:
>> No State employe shall have an adverse interest in any contract with the State agency by which he is employed.

Section 2(4) of the Act, 71 P.S. §776.2(4) in turn defines "have an adverse interest":

> Be the party to a contract, as herein defined, other than the Commonwealth or a State agency or be a stockholder, partner, member, agent, representative or employe of such party.

Section 2(2) of the Act, 71 P.S. §776.2(2), defines "contract" as:

> A contract or arrangement for the acquisition, use or disposal by a State agency of services or of supplies, materials, equipment, land or other personal or real property. . . .

The Department maintains that the principal purpose of the Act is to strengthen public confidence in the integrity of the State's employees and the State's contracting system. We would be hard put not to agree that that is a laudable purpose in these times.

It is the Department's position that merely by virtue of its having contracts with Blust's and Lucas' proposed supplemental employers, the employees are barred from engaging in that employment. Petitioners argue that the Department has invoked a hypertechnical interpretation of the Act to deny Blust's and Lucas' applications.

If it were not for the statutory definition of "have an adverse interest," we would have little difficulty in agreeing with Petitioners' argument. In its usual context, "adverse" means antagonistic, harmful or detrimental.[1] No argument is made that the employment

---

[1] *See* Webster's Third New International Dictionary (1986).

sought for approval by Blust and Lucas would, in any way, be antagonistic, harmful or detrimental to the Department. Indeed, no argument is made that Blust and Lucas have *any* interest in the contracts between the Department and the proposed supplemental employers.

Where, however, the legislature has taken pains to define the terms it has used in a statute, we, as a Court, may not ignore that definition.

Both Petitioners and the Department refer us to pertinent provisions of the Statutory Construction Act of 1972 (SCA), 1 Pa. C. S. §§1501-1991. According to Section 1921(a) of the SCA, 1 Pa. C. S. §1921(a), the object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly and every statute shall be construed, if possible, to give effect to all of its provisions. Section 1921(b) of the SCA, 1 Pa. C. S. §1921(b), states that when the words of a statute are clear and free from ambiguity, we should not disregard the letter of it under the pretext of pursuing its spirit. Section 1922 of the SCA, 1 Pa. C. S. §1922, provides, *inter alia,* that in ascertaining the intention of the legislature, we may presume that the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable, and we may presume that the General Assembly does not intend to violate the Constitutions of the United States or of the Commonwealth.

None of the few reported cases construing the Act[2] has addressed the narrow issue presented to us in this

---

[2] *Flaherty v. Allegheny Port Authority,* 450 Pa. 509, 299 A.2d 613 (1973) held that there was no violation of the Act where a corporation sought to bid on equipment for a project for which it had prepared a preliminary engineering report later adopted by the Port Authority. *Storch v. Pennsylvania Board of Probation and Parole,* 68 Pa. Commonwealth Ct. 74, 449 A.2d 760 (1982) involved an attorney who was employed as a parole agent and who sought to

case, *i.e.*, where no actual adverse interest is shown, are state employees prohibited from engaging in supplemental employment with entities which have contracts with the state agency employer?

We are of the opinion and so hold that the Department's construction of the Act has led to an unreasonable, if not absurd, result in this case. A somewhat analogous case was before our Supreme Court in *Secretary of Revenue v. John's Vending Corporation,* 453 Pa. 488, 309 A.2d 358 (1973). In that case, a corporation's Wholesale Cigarette Dealer's License was revoked because a fifty percent shareholder of the corporation and its president had some twenty years before been convicted of crimes involving moral turpitude, a fact not disclosed by the corporation in its application for a license. Justice (now Chief Justice) NIX, noting that crimes committed in such a remote period of time have little bearing in evaluating the individual's present character,[3] wrote:

> In order to avoid an absurd and harsh result, the court may look beyond the strict letter of the law to interpret a statute according to its reason and spirit and accomplish the object intended by the legislature.

453 Pa. at 494, 309 A.2d at 362 (citations omitted).

---

engage in the private practice of law after filing a statement with the Board that her practice would be limited to non-criminal and non-state related matters. *Commonwealth v. Hughes,* 21 Pa. D. & C. 2d 381 (1960) concerns a state highway employee who purchased and then rented to the Department of Transportation a bulldozer and collected the rentals for himself.

[3] The Court also pointed out, as do Blust and Lucas here, that every citizen has an inalienable right to engage in lawful employment and that the State may not interfere with that right, unless such deprivation is reasonably related to the State interests sought to be protected.

We think the same reasoning should be applied here. To subject employees to the risk of loss of employment *and* criminal prosecution for employment activities totally unrelated to the employees' regular employment is, we believe, beyond the intention of the legislature and the spirit of the Act. We further opine that the Department's rejection of Blust's and Lucas' supplemental employment application would not advance the intention of the legislation to strengthen the public confidence in the integrity of State employees and the State's contracting practices. In that regard, we find helpful Judge (now Senior Judge) BLATT's statement in *Storch,* a case not binding upon us as precedent but useful for persuasive value, that the Act does not prohibit a Commonwealth employee from engaging in a supplemental law practice—it only restricts and limits *the degree* to which an employee can do so.

Our decision does not, of course, eliminate the requirement that State employees subject to Management Directive No. 515.18 must file an application for approval of supplemental employment. Where the State determines that such employment is in fact adverse, such requests must be denied. But where, as here, the only connection between the employee's State employment and the requested supplemental employment consists of unrelated contracts between the State and the proposed supplemental employer, the Act does not apply.

Having determined that it is not necessary for us to consider the constitutional questions raised by Petitioners, we decline to do so. *See Shuman v. Bernie's Drug Concessions,* 409 Pa. 539, 187 A.2d 660 (1963).

### Order

The judgment of this Court is that the provisions of the Adverse Interest Act, Act of July 19, 1957, P.L.

1017, *as amended*, 71 P.S. §§776.1-776.8 are inapplicable to applications for supplemental employment in the absence of a determination that actual adverse interest is present. It is ordered that the Department of Education shall grant the supplemental employment requests of Ross Blust and Geoffrey S. Lucas.

---

DISSENTING OPINION BY JUDGE CRAIG:

The State Adverse Interest Act[1] is based on the fundamental principle that no person can serve two masters with equal faithfulness. It seeks to strengthen public confidence in the integrity of the Commonwealth and its employees by including a provision which provides that no state employee shall moonlight as an employee of an entity which has a contractual relationship with that employee's department in state government.

Even where the employee's own official duties have no involvement with the outside employer, the state employee, beholden to an entity which provides additional income, may nevertheless have an influential fellow-employee relationship with another state employee who *does* have a duty to see that the outside employer-contractor renders the Commonwealth the full performance which is due.

The statute is not draconian in its effect. It does not "subject employees to the risk of loss of employment *and* criminal prosecution for employment activities totally unrelated to the . . . regular employment. . . ." We cannot say that a relationship is totally absent when the same individual is serving both masters. Nor does this statutory requirement subject employees to a "risk." It advises them in advance which moonlighting jobs they should avoid. It does not limit them from

---

[1] Act of July 19, 1957, P.L. 1017, *as amended*, 71 P.S. §§776.1-776.8.

seeking supplementary employment with the vast number of employers who are not contracting with their department in state government.

The statute could not be more clear. It prohibits a state employee from having any "adverse interest" in any contract with the employee's state department. Section 5 of the Act, 71 P.S. §776.5. Then it clearly defines "adverse interest" as, among other things, being an "employee of such party" to a state contract. Section 2(4) of the Act, 71 P.S. §776.2(4).

This court correctly recites that where "the legislature has taken pains to define the terms it has used in a statute, we, as a Court, may not ignore that definition."

Having recognized that principle in this case, this court then cannot validly proceed to ignore the explicit definition."

This court also correctly declares in this case that the Statutory Construction Act, 1 Pa. C. S. §1921(b), "states that when the words of a statute are clear and free from ambiguity, we should not disregard the letter of it under the pretext of pursuing its spirit."

Having made that declaration, this court then cannot validly decide that the statute does not mean what it says, concerning moonlighting with a contractor to one's department, merely because this court conceives an opinion that the literal meaning goes "beyond the intention of the legislature and the spirit of the act." There is no better evidence of the intention of the legislators than the unambiguous words they used. As the Statutory Construction Act intimates, when a court departs from the words used by the elected lawmakers and enshrines judicial opinion as the "spirit of the Act," then the court is enacting its own amendment of the law.

*Storch v. Pennsylvania Board of Probation and Parole,* 68 Pa. Commonwealth Ct. 74, 449 A.2d 760 (1982), provides no analogy helpful to judicial amend-

ment of the statute. *Storch* indeed approved a state employee engaging in law practice on the side, provided that such law practice did not involve representing any person doing business with the Commonwealth and was confined to civil law, thus avoiding entirely the criminal law field with which the state Board of Probation and Parole is associated. Hence *Storch,* as an analogy, would argue that outside employment is allowable only if the employer is not doing business with the state and if it is in a field of endeavor distinct from subject matter of the state's responsibility.

When a law is clear, the duty of the judiciary is to uphold it, even if the result goes contrary to judicial preference. *See Clark v. Department of Public Welfare,* 115 Pa. Commonwealth Ct. 597, 540 A.2d 996 (1988) (applying a law which forces medical malpractice award to be used for entire family's support, rather than to redress the harm done to the one child injured).

The duty of a court is to follow the words of the law when the legislature states them clearly. The legislature itself can amend the law if enforcement according to its terms proves to be unwanted. The judiciary have no power to amend laws.