**ALTOONA HOUSING AUTHORITY,**
**Appellant,**

v.

**CITY OF ALTOONA; Thomas**
**C. Martin, Mayor.**

Commonwealth Court of Pennsylvania.

Argued May 8, 2001.

Decided July 17, 2001.

Reargument Denied En Banc
Sept. 25, 2001.

Terressa A. George, Altoona, for appellant.

Roy A. Powell, Pittsburgh, for appellee.

Before SMITH, Judge, LEADBETTER, Judge, and MIRARCHI, Jr., Senior Judge.

SMITH, Judge.

The Altoona Housing Authority (Housing Authority) appeals from an order of

the Court of Common Pleas of Blair County that sustained the preliminary objections of the City of Altoona (City) to the Housing Authority's complaint for declaratory judgment seeking a determination that the Housing Authority was not required to convey a housing project to the City pursuant to an agreement executed in 1950. The Housing Authority questions whether the trial court erred or abused its discretion in dismissing the complaint or in failing to grant leave to amend where issues of fact remain; whether it erred in failing to consider the authority of the Housing Authority's board of directors in 1950 to bind successor boards; whether it misapplied provisions of three statutes relating to public housing; and whether it erred in determining that the duration of the contract was reasonable.

## I

In 1950 the Housing Authority and the City entered into a "Cooperation Agreement" (Agreement) for the stated purpose of developing a public housing project pursuant to the Housing and Redevelopment Assistance Law, Act of May 20, 1949, P.L. 1663, *as amended*, 35 P.S. §§ 1661–1676. Under the Agreement the City agreed to take steps to annex 17 acres known as "Pleasant Village" (Project), to furnish public services to the Project, to accept dedication of interior streets and alleys and to provide necessary storm and sanitary sewers. The City agreed not to levy or impose real or personal property taxes upon the Project so long as bonds issued in connection with the project remained outstanding. The Housing Authority agreed to make payments in lieu of taxes for that period and to pay for sewer rentals and for the master water meter, meter vault and all water as measured by the master meter and for the installation of fire hydrants. Paragraph 11 stated: "The [Housing] Authority agrees that it will, after the payment of the bonded indebtedness of the Project, convey, upon request, the Project site, together with all improvements thereon, to the City for the sum of One (1) Dollar."

The bonded indebtedness was paid off in April 1999, and in July 1999 the City requested that the Housing Authority convey the Project. The Housing Authority declined, and in January 2000 it filed its complaint for declaratory judgment, contending in Count I that the Project was still "needed" pursuant to Section 10(*o*) of the Housing Authorities Law, Act of May 28, 1937, P.L. 955, *as amended*, 35 P.S. § 1550(*o*), to carry out the purposes of that Act.[1] Count II asserted that the 1950 board of directors of the Housing Authority lacked authority and/or power to bind successor boards of directors in regard to the governmental function of constructing and operating the Project, and Count III contended that the conveyance aspect of the 1950 Agreement was against public policy in that it provided for an unreasonable term of 49 years without consideration of change of circumstances. The City filed preliminary objections in the nature of a demurrer.

The trial court sustained the preliminary objections. As to Count I, the trial court stated that 35 P.S. § 1550(*o*) gave control of a property to an authority before it chose to bind itself to a contract of conveyance, but it did not create a loophole for the Housing Authority to avoid a legal obligation. The trial court noted

---

1. As part of a lengthy enumeration of powers of a housing authority 35 P.S. § 1550(*o*) authorizes an authority "[t]o sell, exchange, transfer or assign any real or personal prop- erty, or interest therein, to any person, firm, corporation, public or private, when the Authority determines that such property is not needed for the purposes of this act."

that the purpose of the operation of the Housing Authority pursuant to Section 2(d)(2) of the Housing Authorities Law, 35 P.S. § 1542(d)(2), is "the providing of safe and sanitary dwelling accommodations for persons of low income through new construction or the reconstruction, restoration, reconditioning, remodeling or repair of existing structures, so as to prevent recurrence of the economically and socially disastrous conditions hereinbefore described...."

The trial court stated that City Ordinance 3396 and Paragraph 7 of the complaint showed that the Project was designed to provide housing primarily to veterans and their families and then to families of limited income. There was no mention of a "Veterans' Housing Authority" within the City in 1950, but the trial court nonetheless concluded that the agreed intent and actions of the Housing Authority and the City show that the Housing Authority was acting on behalf of veterans, and the court concluded that the Veterans' Housing Authority Act, Act of July 7, 1947, P.L. 1414, 35 P.S. §§ 1590.1–1590.21, applied. Although the trial court acknowledged that the Project met the structural criteria for permanent housing, the court stated that it was constructed as a temporary safety net for veterans and that its purpose should have been served in 49 years. Further, the trial court stated that the Authority had disregarded the requirement that such housing was to be rented only to persons of low income, citing *Dornan v. Philadelphia Housing Authority*, 331 Pa. 209, 200 A. 834 (1938), and that the Authority's claim that 75 percent of the residents met the statutory criteria for low income was not sufficient under the "exclusive" standard stated in *Dornan*.

As for Counts II and III, asserting that prior Housing Authority boards could not bind successors and that the 49-year term of the Agreement was unreasonable, the trial court referred to Section 4 of the Housing Cooperation Law, Act of May 26, 1937, P.L. 888, *as amended*, 35 P.S. § 1584. That section provides that any "State public body," [2] for the purpose of aiding and cooperating in the planning, undertaking, construction or operation of housing projects, may, with or without consideration: "(d) Enter into agreements, extending over any period, with a housing authority or the Federal Government respecting action to be taken by such State public body pursuant to any of the powers of this act...." For such cooperation to occur, the trial court stated, successor housing authority boards must be bound by agreements. Also, the authorization for agreements to extend "over any period" indicated the legislature's expectation that contracts or other agreements would outlive the terms of elected officials.[3]

## II

■ The Housing Authority first argues that the trial court erred or abused its discretion in granting the preliminary

---

2. "State Public Body" is defined in Section 3(d), 35 P.S. § 1583(d), as "any city, borough, town, township, county, municipal corporation, commission, district authority, other subdivision or public body of this Commonwealth." "Housing Authority" is defined separately in Section 3(b), 35 P.S. § 1583(b), as "any housing authority created pursuant to the Housing Authorities Law of this Commonwealth."

3. The Court's review of a trial court's order sustaining preliminary objections in the nature of a demurrer is to determine whether the trial court abused its discretion or committed an error of law. *Baravordeh v. Borough Council of Prospect Park*, 706 A.2d 362 (Pa.Cmwlth.1998).

objections and dismissing the complaint or alternatively in failing to grant leave to amend where issues of fact remained. It notes that in ruling upon a demurrer the court must regard as true all well-pled, material facts of the complaint and all reasonable inferences therefrom. *Baravordeh v. Borough Council of Prospect Park,* 706 A.2d 362 (Pa.Cmwlth.1998). The court is to determine whether the facts pled are legally sufficient to permit the action to continue; to sustain such an objection it must appear with certainty that the law will permit no recovery, and any doubt must be resolved in favor of refusing to sustain. *Curtis v. Cleland,* 122 Pa.Cmwlth. 328, 552 A.2d 316 (1988).

The Housing Authority argues that issues of fact remain. First, it contends that 35 P.S § 1550(*o*) is nullified by the trial court's conclusion that once the board of directors chooses to bind itself to a contract of conveyance it is deemed to have determined that the property is no longer needed for purposes of the Housing Authorities Law. The Housing Authority's power under that section is expressly limited to selling, exchanging, transferring or assigning real property *"when the Authority determines that such property is not needed for the purposes of this act."* (Emphasis added.) Based on the pleadings, the Housing Authority did not determine and could not have determined in 1950 that there would not be a need for the property in 1999. Absent any such determination, which the legislature clearly intended to be made, any sale or conveyance of the property was unenforceable. A housing authority may bind itself to make a conveyance so long as it first makes the statutorily required determination of need.

On a related point, the Housing Authority maintains that the trial court improperly took it upon itself to make a determination of whether the property was still needed to carry out the purposes of the Housing Authorities Law, when 35 P.S. § 1550 vests that determination solely with the Housing Authority. In support it cites *Blumenschein v. Housing Authority of Pittsburgh,* 379 Pa. 566, 573, 109 A.2d 331, 335 (1954), where the Supreme Court upheld a housing authority's choice of a site for a housing project, emphasizing that *"judicial* discretion may not be substituted for *administrative* discretion." In addition, Section 6 of the 1949 Housing and Redevelopment Assistance Law, 35 P.S. § 1666, provides in part that preference in occupancy should be given to veterans for five years after the effective date and thereafter, at the discretion of the Department of Commerce, to persons displaced by the necessary operations of public housing and redevelopment projects and other improvement, provided that such persons meet the income qualifications established by the department. The Housing Authority contends that 75 percent occupancy by persons of low income is sufficient to show continued need for the Project, and it asserts that whether the families residing in the Project meet the guidelines is a question of fact that remains to be resolved.

The Housing Authority makes further statutory arguments under its third heading, contending that the trial court erred by misapplying the Veterans' Housing Authority Act and by incorrectly applying other statutes as well. Although the Agreement specifically referenced the Housing and Redevelopment Assistance Law,[4] and the trial court acknowledged

---

4. Section 5 of the Housing and Redevelopment Assistance Law, 35 P.S. § 1665, provides that housing authorities created under the Housing Authorities Act shall have the right to contract for, erect and maintain projects under the Housing and Redevelopment Assistance Law.

that there was no mention of a veterans' housing authority in the City in 1950, the trial court applied the Veterans' Housing Authority Act and concluded that the Project was intended to provide temporary, emergency housing. However, pursuant to Section 6 of the Housing and Redevelopment Assistance Law, 35 P.S. § 1666, the Project was constructed to provide permanent-quality housing for persons of limited income, with preference given for the first five years to veterans. Further, Section 4 of the Housing Cooperation Law, 35 P.S. § 1584, by its terms applies to "State public bodies," and it authorizes them to sell property to housing authorities and to make agreements with them extending over any period, but it does not authorize a housing authority to sell property regardless of need.

The City in response asserts that all facts necessary to a resolution of the case are undisputed, with the outcome turning on the Housing Authority's statutory powers. It argues that the Housing Authority's power to convey real property does not flow from 35 P.S. § 1550(o) alone. The City refers to Section 10(h) of the Housing Authorities Law, 35 P.S. § 1550(h), which authorizes a housing authority to arrange with a city "for the acquisition by such city ... of property options or property rights, or for the furnishing of property or services in connection with a project." It refers also to Sections 2 and 4 of the Act of September 14, 1938, Special Sess., P.L. 34, 35 P.S. §§ 1572 and 1574, which confer upon a housing authority the power, before or after it undertakes and completes a project

to remove buildings from a slum area, to enter into contracts with the "Commonwealth or any of its agencies or instrumentalities of government, including the General State Authority, for a term not to exceed ninety-nine years, or to grant, assign or convey, either the fee, or such right, title, interest or easement as shall be deemed necessary ... for any public purpose...." 35 P.S. § 1574.[5]

The City stresses that Section 10(w) of the Housing Authorities Law, 35 P.S. § 1550(w), authorizes a housing authority to "make and execute contracts and other instruments necessary or convenient to the exercise of the powers of the Authority," and Section 10(j), 35 P.S. § 1550(j), authorizes such authorities to arrange with the Commonwealth or municipalities to provide customary services, to provide and maintain municipal facilities and to zone. Section 4 of the Housing Cooperation Law, 35 P.S. § 1584, provides that political subdivisions may enter into agreements with housing authorities for the purpose of cooperating in the planning, undertaking, construction and operation of housing projects, with or without consideration. The City contends that the Agreement fits within powers granted by the Housing Authorities Law and the Housing and Redevelopment Act.

The Court notes that none of the statutory authority relied upon by the trial court or the City expressly authorizes a Housing Authority to convey its real property, whereas 35 P.S. § 1550(o) is directed to that precise subject. The Housing Authority was not created under the Veter-

---

**5.** The City also cites Section 9(i) of the Veterans' Housing Authority Act, 35 P.S. § 1590.9(i), noting that it confers upon a Veterans' Housing Authority created under that act the power to "sell or otherwise dispose of any real or personal property acquired under the provisions of this act." As discussed below, the Housing Authority is not a Veterans' Housing Authority created under the Veterans' Housing Authority Act. However, the legislature's use of different language in this provision of a similar act indicates a different intent.

ans' Housing Authority Act for the purpose of providing temporary, emergency, non-permanent housing to veterans and their families, *see* Section 2 of the Veterans' Housing Authority Act, 35 P.S. § 1590.2, and the trial court's conclusion that that act applied was in error. The City relies upon the general power of Housing Authorities in 35 P.S. § 1550(w) to enter into contracts and instruments necessary or convenient to the exercise of its powers, but that provision does not define what those substantive powers are. Section 1550(*o*) expressly addresses conveying housing authority property, and it does, as the Housing Authority maintains, require a determination that the property is not needed for the purposes of the Housing Authorities Law.

A cardinal principle of statutory interpretation is that every statute shall be construed, if possible, to give effect to all of its provisions so that none are rendered mere surplusage. Sections 1921(a) and 1922(2) of the Statutory Construction Act of 1972, 1 Pa.C.S. §§ 1921(a) and 1922(2); *White v. Associates in Counseling & Child Guidance, Inc.,* 767 A.2d 638 (Pa.Cmwlth. 2001). The City's interpretation of the Housing Authority's power to enter into contracts under Section 1550(w) as encompassing the power to convey real property, without any determination regarding need, would render Section 1550(*o*) entirely surplusage.

The Housing Authority's power under 35 P.S. §§ 1572 and 1574 relates to sales or leases to the Commonwealth or any agency thereof or instrumentalities of government, including the General State Authority. The title of the Act indicates that it is intended to apply to Commonwealth entities. The title of an act may be considered in the construction of it. Section 1924 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1924; *Fedor v. Borough*

*of Dormont,* 487 Pa. 249, 409 A.2d 334 (1979). In addition, parallel provisions, with essentially the same title, were enacted at the same time as Sections 2 and 4 of the Act of September 14, 1938, Special Sess., P.L. 32, 71 P.S. §§ 1675 and 1677, relating to the power of the state and its agencies and instrumentalities to contract with housing authorities. Therefore, 35 P.S. §§ 1572 and 1574 do not confer a general power upon the Housing Authority to convey real property. The general power pursuant to 35 P.S. § 1584 of municipalities to enter into agreements with housing authorities for the purpose of cooperating in the undertaking of housing projects does not conflict with the express requirement of 35 P.S. § 1550(*o*) for a determination that housing authority property is not needed before it may be conveyed.

### III

 The Housing Authority also contends that the trial court erred in concluding that the Housing Authority's board at the time of the Agreement had the power to bind the current board. The Housing Authority emphasizes that in the performance of a governmental function, as opposed to a proprietary function, a municipal board having legislative authority may not take action that will bind its successors. *Lobolito, Inc. v. North Pocono School Dist.,* 722 A.2d 249 (Pa.Cmwlth. 1998), *aff'd in part,* 562 Pa. 380, 755 A.2d 1287 (2000). In general, proprietary functions are those that a legislative board is not required to perform, that may be carried on by private enterprise or that are undertaken as means to raise revenue; governmental functions are those that are entrusted to a board by the legislature, that are indispensable to the proper functioning of government and that implicate the policy-making function. *Id.*

The Supreme Court in *Lobolito, Inc.* affirmed this Court's holding that a school board's decision to go forward with construction of an elementary school in tandem with the construction of a sewage treatment plant by a private party was a governmental function, and an earlier school board could not enter into an agreement that would extend beyond the term for which the members of the body were elected. The court cited *Mitchell v. Chester Housing Authority*, 389 Pa. 314, 132 A.2d 873 (1957), which explained the policy that newly elected bodies should not be hamstrung by acts of their predecessors. The Housing Authority states that the Housing Authorities Law and the Housing Cooperation Law, read together, provide general authority for the Housing Authority and the City to enter into long-term contracts for the planning, construction and continued operation of low-income housing units, as well as for the making of payments by the Housing Authority for improvements, services and facilities to be provided by the City, *see* Section 5 of the Housing Cooperation Law, 35 P.S. § 1585, but it characterizes these as proprietary functions.

The City responds that housing authorities may enter into contracts binding successors as to governmental functions when the contracts are validly entered into and authorized by statute, citing *Horvat v. Jenkins Township School Dist.*, 337 Pa. 193, 10 A.2d 390 (1940). In *Horvat* the Supreme Court held that a school board acted within its authority in granting a three-year contract to a principal, and a later school board could not undo what had

been validly done.[6] Further, in *Chichester School Dist. v. Chichester Educ. Ass'n.*, 750 A.2d 400 (Pa.Cmwlth.2000), *appeal denied*, —— Pa. ——, —— A.2d ——, 2000 WL 1634528 (No. 333 M.D. Alloc. Dkt. 2000, filed October 31, 2000), which was decided after *Lobolito, Inc.*, where a school board entered into five-year contracts with two teachers' unions some two years before the end of the board's term, this Court held that the policy of preventing last-minute commitments by outgoing legislative boards was not implicated and that the contracts, although clearly governmental functions, were authorized under Sections 701–904 of the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101-701—1101-904. The City also disputes the Housing Authority's characterization of contracts relating to operation and maintenance of a project as being proprietary and therefore not subject to the limitation noted in *Lobolito, Inc.*

■ The Court agrees with the Housing Authority as to the vitality of the general principle that a board exercising legislative authority lacks the power to bind its successors as to governmental functions. *Lobolito, Inc.; County of Butler v. Local 585, Service Employees International Union*, 158 Pa.Cmwlth. 519, 631 A.2d 1389 (1993). Nevertheless, specific statutory provisions may affect the analysis in particular situations. *Chichester School Dist.* Here, the Court agrees with the City that the construction and operation of the Project, which were necessarily subject to agreements (including terms of financing) extending beyond the terms of the members of the board of directors of the Housing

**6.** In a reply brief the Housing Authority notes that the Supreme Court in *Lobolito, Inc.* expressly addressed *Horvat* and two other cases holding that government contracts could bind successors. The Court stated that the successor municipal authorities in those cases did not challenge on the basis of the governmental-proprietary distinction, and to the extent that the cases could be read to suggest that municipal legislative bodies could bind their successors to contracts encompassing governmental functions, the Court declined to follow them. *Lobolito, Inc.*, 562 Pa. at 386 n. 6, 755 A.2d at 1290 n. 6.

Authority in 1950, were governmental as opposed to proprietary actions. However, the broad powers of housing authorities under the Housing Authorities Act to acquire, lease and operate housing projects and provide for their construction or reconstruction and to take over housing projects by purchase, lease or otherwise do not override the co-equal requirement of 35 P.S. § 1550(o) that sales of housing authority property be preceded by a determination that the property is not needed for the purposes of the Act. It was the effort of the Housing Authority's board in 1950 to bind its successors by avoiding such a determination that constituted an impermissible governmental function reaching far into the future. Accordingly, the order of the trial court sustaining preliminary objections is reversed, and this matter is remanded for further proceedings.

Judge LEADBETTER dissents.

### ORDER

AND NOW, this 17th day of July, 2001, the order of the Court of Common Pleas of Blair County is reversed, and this matter is remanded for further proceedings consistent with the foregoing opinion.

Jurisdiction is relinquished.