Earl **NIXON**, Reginald Curry, Kelly Williams, Marie Martin, Theodore Sharp, and Resources for Human Development, Inc., Petitioners,

v.

The **COMMONWEALTH** of Pennsylvania, Department of Public Welfare of the Commonwealth of Pennsylvania, Department of Aging of the Commonwealth of Pennsylvania, and Department of Health of the Commonwealth of Pennsylvania, Respondents.

Commonwealth Court of Pennsylvania.

Argued Nov. 1, 2000.

Decided Dec. 11, 2001.

David J. Wolfsohn, Philadelphia, for petitioners.

Jeffrey J. Wood, Harrisburg, for respondents.

Before DOYLE, President Judge, McGINLEY, SMITH, PELLEGRINI, FRIEDMAN, KELLEY and FLAHERTY, Judges.

SMITH, Judge.[1]

Petitioners Earl Nixon, Reginald Curry, Kelly Williams, Marie Martin, Theodore Sharp and Resources for Human Development, Inc. (RHD), a non-profit social service organization, filed in this Court's original jurisdiction their petition for review in the nature of a complaint in equity on August 8, 2000. Petitioners seek a declaration from this Court that the criminal records provisions of Sections 501—508 of the Older Adults Protective Services Act (Act), Act of November 6, 1987, P.L. 381, *as amended,* added by Section 5 of the Act of December 18, 1996, P.L. 1125 (Act 169), 35 P.S. §§ 10225.501—10225.508, violate Article I, Section 1 of the Pennsylvania Constitution as applied to them. They also request the Court to permanently enjoin Respondents, the Department of Aging, the Department of Public Welfare and the Department of Health, from enforcing against Petitioners the unconstitutional provisions of the Act. Petitioners also filed their motion for summary relief pursuant to Pa. R.A.P. 1532(b). Respondents filed their preliminary objections in the nature of a demurrer asserting that the employment disqualification provisions of the Act

do not violate the Pennsylvania Constitution.

I

Originally enacted on November 6, 1987, the Act established a program of protective services for the detection, prevention, reduction or elimination of abuse, neglect, exploitation and abandonment of persons within the jurisdiction of this Commonwealth who are 60 years of age or older. The Act created a system of reporting and investigating the abuse of older adults. On December 18, 1996, the Act was amended, and a chapter was added pertaining to the disqualification from employment of any individuals who had criminal records and who were employed in any facility catering to older adults.[2] Act 169 required criminal history background checks of all applicants for employment with covered facilities, and it prohibited a facility from hiring an applicant or retaining an employee required to submit information pursuant to Section 502(a), 35 P.S. § 10225.502(a), if the applicant or employee was convicted of certain specified criminal offenses. Section 503(a) of the Act, 35 P.S. § 10225.503(a).

The Legislature again amended the Act by the Act of June 9, 1997, P.L. 160 (Act 13). Among other changes, Act 13 rewrote the enumerated disqualifying felonies and misdemeanors in Section 503 and removed the ten-year limitation period for convictions involving lesser crimes formerly found in that section.[3] Any potential

---

1. This case was assigned to the opinion writer on September 11, 2001.

2. A "facility" is defined under Section 103 of the Act, 35 P.S. § 10225.103, as a domiciliary care home, a home health care agency, a long-term care nursing facility, an older adult daily living center or a personal care home.

3. Section 503 of the Act now provides in part:

(a) **General rule.**—In no case shall a facility hire an applicant or retain an employee ... if the applicant's or employee's criminal history record information indicates the applicant or employee has been convicted of any of the following offenses:

(1) An offense designated as a felony under.... The Controlled Substance, Drug, Device and Cosmetic Act.

employee and those employed in covered facilities for less than one year from the effective date of the Act are required to submit to criminal background checks. *See* Section 508(1) of the Act, 35 P.S. § 10225.508(1). Petitioners complain that nursing homes, home health care agencies, residential mental health and mental retardation facilities and other health care facilities are now prohibited from employing an individual who was convicted at any time during his or her lifetime of any one of a broad range of enumerated misdemeanors and felonies.

## II

Petitioners raise three challenges to Act 13: the Legislature places no temporal limitations on convictions, the prohibition on employment extends to all positions at a covered facility and there are no exceptions to the Act nor procedural protections for assessing an individual on a case-by-case basis. To support their preliminary

objections, Respondents rely upon the presumption of the constitutionality of acts of the General Assembly. They also contend that federal decisions permit legislatures to enact the type of legislation at issue here and that if the Court were to grant relief, other state statutes restricting employment opportunities might also be invalidated. Citing *Heller v. Doe*, 509 U.S. 312, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993), *inter alia*, Respondents state that they have no obligation to produce evidence to sustain the rationality of a statutory classification and that the one here has a reasonable basis. Moreover, the Act does not violate Petitioners' due process rights.

▇▇▇▇▇ In ruling upon preliminary objections in the nature of a demurrer, the Court must accept as true all well-pled facts of the complaint and all reasonable inferences therefrom, and it must determine whether the facts pled are legally

---

(2) An offense under one or more of the following provisions of 18 Pa.C.S. (relating to crimes and offenses):
Chapter 25 (relating to criminal homicide).
   Section 2702 (relating to aggravated assault).
   Section 2901 (relating to kidnapping).
   Section 2902 (relating to unlawful restraint).
   Section 3121 (relating to rape).
   Section 3122.1 (relating to statutory sexual assault).
   Section 3123 (relating to involuntary deviate sexual intercourse).
   Section 3124.1 (relating to sexual assault).
   Section 3125 (relating to aggravated indecent assault).
   Section 3127 (relating to indecent exposure).
   Section 3301 (relating to arson and related offenses).
   Section 3502 (relating to burglary).
   Section 3701 (relating to robbery).
   A felony offense under Chapter 39 (relating to theft and related offenses) or two or more misdemeanors under Chapter 39.

Section 4101 (relating to forgery).
   Section 4114 (relating to securing execution of documents by deception).
   Section 4302 (relating to incest).
   Section 4303 (relating to concealing death of child).
   Section 4304 (relating to endangering welfare of children).
   Section 4305 (relating to dealing in infant children).
   Section 4952 (relating to intimidation of witnesses or victims).
   Section 4953 (relating to retaliation against witness or victim).
   A felony offense under section 5902(b) (relating to prostitution and related offenses).
   Section 5903(c) or (d) (relating to obscene and other sexual materials and performances).
   Section 6301 (relating to corruption of minors).
   Section 6312 (relating to sexual abuse of children).

sufficient to permit the action to continue. *Altoona Housing Authority v. City of Altoona*, 785 A.2d 1047 (Pa.Cmwlth.2001). To sustain preliminary objections, it must appear with certainty to the Court that the law will permit no recovery, and all doubt must be resolved in favor of refusing to sustain the objections. *Id.; Baravordeh v. Borough Council of Prospect Park*, 706 A.2d 362 (Pa.Cmwlth.1998). In reaching its decision, the Court has reviewed and accepted as true, *inter alia*, the following well-pled facts.

Thirty years ago, in 1971, Mr. Nixon was convicted at the age of nineteen of possession of marijuana for his personal use and was sentenced to three years of probation, which he completed satisfactorily. After employment training by the Pennsylvania Office of Vocational Rehabilitation, Mr. Nixon changed his career as a small business owner and became employed in 1990 as a direct-care specialist with the Allegheny Valley School, a facility that provided care to mentally ill patients. Respondents admit that Mr. Nixon was an excellent worker, having been promoted to residential service manager at the facility two years after he began his employment there. Several years later, Mr. Nixon became employed as a resident manager for the University of Pittsburgh Medical Center at its retirement community, and he was later promoted to manager of the medical center's assisted living facility. In 1998 he obtained his personal care administrator's license from his local community college and thereafter became an administrator of the assisted living facility. Mr. Nixon ended his job at the facility in early 2000, and because of the Act he is now forever barred from holding gainful employment in any covered facility, despite his exemplary work history.

Twenty-nine years ago, in 1972, Mr. Curry was convicted at the age of nineteen for stealing $30. He was charged with larceny, now a misdemeanor, and was sentenced to eighteen months of probation, which he served without incident. Mr. Curry worked for many years providing direct services to youth and to mentally disabled individuals. From 1984 to 1991 he worked as a youth services counselor at a residential facility for delinquent youth and as a resident counselor at a community living program for mental health and mental retardation clients. In 1998 Mr. Curry began working as a driver transporting mental health and mental retardation clients for Northwest Human Services. In early 1999 he was discharged because of his 1972 conviction. Mr. Curry subsequently became employed as a residential advisor for RHD but was terminated because of Act 13 requirements. Mr. Curry is now forever barred from gainful employment in any facility covered by the Act, despite his exemplary work history.

Twenty-seven years ago, in 1974, Ms. Williams was convicted of armed robbery; she was present with another individual who possessed a firearm during a robbery. She completed her sentence without incident. Ms. Williams has worked in the healthcare field for approximately twelve years, having earned an associate's degree in phlebotomy and later becoming a certified phlebotomist and a member of the American Society of Clinical Phlebotomists. She became employed in 1988 at Montgomery Hospital in Norristown as a phlebotomist, providing services to various nursing homes. Because she had not been employed at the hospital for twelve months preceding the effective date of Act 13, the hospital discharged her due to the 1974 conviction. She is now forever barred from working in a facility covered by the Act.

RHD provides services for individuals suffering from mental illness, mental re-

tardation or chemical dependency. It recruits many of its employees from the inner city, and between July 1, 1997 and July 30, 1998 RHD hired 362 individuals to work in its facilities, located principally in Pennsylvania. Because of Act 13, RHD was required to discharge twenty-five employees, twenty-three of whom are African–Americans and included Petitioners Curry and Martin. RHD averred that the Act has interfered with its ability to hire and retain the best qualified employees and has adversely impacted upon its ability to provide services to its clients. RHD was forced to terminate a successful support program that it administered for veterans at the Coatesville Veterans Administration Hospital due to the Act's adverse impact on its workforce.

### III

Article I, Section 1 of the Pennsylvania Constitution provides: "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." As was noted in *Hunter v. Port Authority of Allegheny County*, 277 Pa.Super. 4, 419 A.2d 631 (1980), the Supreme Court has consistently interpreted Article I, Section 1 as guaranteeing an individual's right to engage in any of the common occupations of life, citing *Adler v. Montefiore Hosp. Ass'n of Western Pennsylvania*, 453 Pa. 60, 311 A.2d 634 (1973), and *Gambone v. Commonwealth*, 375 Pa. 547, 101 A.2d 634 (1954), among other cases.

In *Adler* the Supreme Court cited *Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), for the proposition that the right to engage in common occupations as part of the liberty protected by the Fourteenth Amendment to the United States Constitution may not be interfered with, under the guise of protecting the public interest, by legislative action that is arbitrary or without reasonable relation to some purpose within the competency of the state to effect. The Supreme Court stated:

[A] law which purports to be an exercise of the police power must not be unreasonable, unduly oppressive or patently beyond the necessities of the case, and the means which it employs must have a real and substantial relation to the objects sought to be attained. Under the guise of protecting the public interests the legislature may not interfere with private business or impose unusual and unnecessary restrictions upon lawful occupations.

*Adler*, 453 Pa. at 72, 311 A.2d at 640 (quoting *Gambone*, 375 Pa. at 551, 101 A.2d at 637). In *Hunter* the trial court sustained a demurrer to an applicant's complaint in equity challenging the refusal to hire him as a bus driver based upon a thirteen-year-old conviction of aggravated assault for which he had received a pardon. The Superior Court reversed, holding that denial of public employment based upon a criminal record must be reasonably related to the furtherance of a legitimate public objective, and in that case the reasonableness of the refusal to hire was not apparent on the face of the complaint.

Petitioners argue that the holding in *Secretary of Revenue v. John's Vending Corp.*, 453 Pa. 488, 309 A.2d 358 (1973), controls the outcome of this case. In *John's Vending* the Supreme Court reversed this Court's decision to uphold the revocation of a wholesale cigarette dealer's license based upon the prior conviction record of a fifty-percent shareholder and former president of the company, Raymond Martorano. In reversing this Court and reinstating the license, the Supreme

Court noted that every citizen has a right to engage in lawful employment, and a state may not deprive such citizen of this right unless the deprivation is reasonably related to the state interest sought to be protected. It further stated that remote convictions were irrelevant to predicting future behavior and that courts must interpret statutes according to reason and to their spirit.

The Supreme Court reasoned in relevant part in *John's Vending:*

> Where, as here, nearly twenty years has expired since the convictions and the record reveals that the individual has held this position of responsibility for twelve years without any allegation of impropriety, it is ludicrous to contend that these prior acts provide any basis to evaluate his present character.
>
> ... To interpret Section 403(2) as a blanket prohibition barring anyone who has been convicted of a crime of moral turpitude without regard to the remoteness of those convictions or the individual's subsequent performance would be unreasonable. We cannot assume that the legislature intended such an absurd and harsh result. *See, Appeal of Gagliardi,* 401 Pa. 141, 163 A.2d 418 (1960).
>
> We are also mindful that such a result runs afoul of the deeply ingrained public policy of this State to avoid unwarranted stigmatization of and unreasonable restrictions upon former offenders. This State in recent years has been unalterably committed to rehabilitation of those persons who have been convicted of criminal offenses. *To forever foreclose a permissible means of gainful employment because of an improvident act in the distant past completely loses sight of any concept of forgiveness for prior errant behavior and adds yet another stumbling block along the difficult road of rehabilitation.*
>
> ... During the twelve years in which [Mr. Martorano was employed as president], there is no suggestion of any impropriety concerning either his actions or those of the appellant corporation.... Under facts such as those presented in this appeal, where the prior convictions do not in any way reflect upon the appellant's present ability to properly discharge the responsibilities required by the position, we hold that the convictions cannot provide a basis for the revocation of a wholesaler's license.

*Id.* at 494–95, 309 A.2d at 362 (emphasis added). The Court agrees that the general principles of law and public policy enunciated by the Supreme Court in *John's Vending* apply to this case just as they have been applied to a myriad of other factual scenarios where the state interest involved may have been lesser or greater than those involved in this case.[4]

---

4. *See, e.g., Hunger v. Grand Central Sanitation,* 447 Pa.Super. 575, 670 A.2d 173 (1996) (discussing *John's Vending* in concurring opinion in case involving public policy exceptions to at-will employment in Pennsylvania); *Jenkins v. Bolla,* 411 Pa.Super. 119, 600 A.2d 1293 (1992) (discussing *John's Vending* in an invasion of privacy suit resulting from disclosures of "ancient" convictions of operator of boarding home); *Limelight Limousine, Inc. v. Pennsylvania Public Utility Commission,* 135 Pa. Cmwlth. 316, 580 A.2d 472 (1990) (discussing *John's Vending* in connection with Public Utility Commission's function to ensure the public's safety when reviewing the fitness of an applicant for motor common carrier license charged with criminal misconduct); *Foose v. State Board of Vehicle Manufacturers, Dealers and Salespersons,* 135 Pa.Cmwlth. 62, 578 A.2d 1355 (1990) (discussing *John's Vending* and concluding that conviction for drug crime of moral turpitude less than two years earlier was relevant to automobile dealer's application for license renewal); and *Federation of State Cultural and Educational Professionals v. Department of Education,* 119 Pa.Cmwlth. 63, 546 A.2d 147 (1988) (discussing *John's*

■ A recent decision by the Court, sitting en banc, in *Mixon v. Commonwealth*, 759 A.2d 442 (Pa.Cmwlth.2000), *aff'd per curiam*, 566 Pa. 616, 783 A.2d 763 (2001), underscores the holding in *John's Vending*. In *Mixon* this Court invalidated a provision of the Voter Registration Act, Act of June 30, 1995, P.L. 170, 25 P.S. §§ 961.101—961.5109, which prohibited ex-felons from registering to vote within five years after their release from incarceration. The Court observed that nothing supported the logic advanced by the Commonwealth, which argued for the continued punishment of released felons by stripping them of the right to register to vote for an additional five years after their incarceration. The Court rejected the illogical assumption advanced by the Commonwealth that there could be no possibility of rehabilitation during the ex-felons' incarceration and for another five years thereafter. While the right to vote is one of the most basic, *Reynolds v. Sims*, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), the right to lawful employment is absolute.[5] *John's Vending*.

■ Petitioners' well-pled facts vividly illustrate the constitutional infirmities present in Act 13 and the draconian impact of its enforcement. They further demonstrate the arbitrary and irrational nature of the challenged provisions and establish that no rational relationship exists between the classification imposed upon Petitioners and a legitimate governmental purpose. Respondents have essentially agreed that Petitioners' conviction records do not reflect upon their present or indeed past ability to successfully perform their jobs in facilities covered by the Act. Respondents admitted Petitioners' factual allegations and agreed that "Petitioners would make excellent care workers for older Pennsylvanians." *See* Transcript of 8/31/00 preliminary injunction hearing, N.T. at pp. 2—3, 15. Respondents have acknowledged that there is nothing to dispute or to be tried, and they urged the Court to issue a final expedited decision in the case if the Court overrules their preliminary objections. *Id.* Accordingly, the Court holds that the criminal records provisions of the Act are unconstitutional as applied to Petitioners and therefore overrules Respondents' preliminary objections. For the reasons discussed, the Court hereby grants Petitioners' motion for summary relief.[6]

Vending and applying its holding to determine that to subject state employees to risk of losing employment and criminal prosecution for employment activities unrelated to their regular employment exceeds legislative intent and the spirit of the State Adverse Interest Act, Act of July 19, 1957, P.L. 1017, *as amended*, 71 P.S. §§ 776.1—776.8).

5. While not binding on this Court, the holding in *Davis v. Bucher*, 451 F.Supp. 791 (E.D.Pa. 1978), also lends support for the Court's decision in this case. The federal district court granted summary judgment to the plaintiff in a lawsuit challenging the constitutionality of a blanket hiring policy of the City of Philadelphia that prohibited the employment of former drug users. The court determined that no rational relationship existed between the classification and a legitimate governmental

purpose for which it was used. *Also see Furst v. New York City Transit Authority*, 631 F.Supp. 1331 (E.D.N.Y.1986) (granting summary judgment to plaintiff in suit challenging constitutionality of employer's policy of dismissing all employees convicted of felonies).

6. *See* N.T. at p. 22. *Also see Pennsylvania Bar Ass'n v. Commonwealth*, 147 Pa.Cmwlth. 351, 607 A.2d 850 (1992) (granting summary relief when the moving party showed that the case was clear and free from doubt, no issues of genuine material fact existed to be tried and it was entitled to relief as a matter of law). Pursuant to Pa. R.A.P. 1532(b): "At any time after the filing of a petition for review in an appellate or original matter the court may on application enter judgment if the right of the applicant thereto is clear." 1 G. Ronald Darlington et al., Pennsylvania Appellate Practice

## ORDER

AND NOW this 11th day of December, 2001, Respondents' preliminary objections are overruled, and Petitioners' motion for summary relief is granted.

FLAHERTY, Judge, dissenting.

I respectfully dissent because I do not agree with the Majority that the criminal records provision of Sections 501–508 of the Older Adults Protective Services Act (Act) violates Article I, Section I of the Pennsylvania Constitution.[1]

While Article I, Section I guarantees an individual's right to engage in any of the common occupations of life, *Hunter v. Port Authority of Allegheny County,* 277 Pa.Super. 4, 419 A.2d 631 (1980), the right to engage in a profession is "subject to the lawful exercise of the state's police power to protect the health, safety, welfare and morals by promulgating statutes which reasonably regulate occupations." *Pennsylvania Medical Society v. Foster,* 147 Pa.Cmwlth. 528, 608 A.2d 633, 637 (1992) (citing *Adler v. Montefiore Hospital Association of Western Pennsylvania,* 453 Pa. 60, 311 A.2d 634 (1973)).

The state interest sought to be protected in this case is that of older adults who are incapable of safeguarding themselves. Section 102 of the Act, 35 P.S. § 10225.102 states the legislative policy:

It is declared the policy of the Commonwealth of Pennsylvania that *older adults who lack the capacity to protect themselves and are at imminent risk of* abuse, neglect, exploitation or abandonment shall have access to and be provided with services necessary to protect their health, safety and welfare.... It is the intent of the General Assembly to provide for the detection, reduction, correction or elimination of abuse, neglect, exploitation and abandonment, and to establish a program of protective services for older adults in need of them.

(Emphasis added.)

The state interest sought to be protected is vastly superior to that in *Secretary of Revenue v. John's Vending Corp.,* 453 Pa. 488, 309 A.2d 358 (1973), relied on by the Majority. In *John's Vending* the Pennsylvania Cigarette Tax Board (Board) revoked the wholesale cigarette dealer's license previously issued to John's Vending upon learning that Raymond Martorano, a 50% shareholder and former president of the company, had been convicted of several crimes occurring sixteen to nineteen years ago, including selling untaxed liquor and selling derivatives of opium. The Pennsylvania Cigarette Tax Act prohibited the issuance of a wholesale license if an officer of the corporation had been convicted of a crime of moral turpitude. Because Martorano had been convicted of crimes involving moral turpitude, the Secretary of Revenue revoked the wholesale license. On appeal, this court affirmed.[2]

The Supreme Court reversed and reinstated the license. The Court observed that the purpose of the Cigarette tax Act was to raise revenue by means of an excise tax on cigarettes. To effectuate the tax,

§ 1532:6 (2d ed.1994, rev.2000) notes that this rule differs from Pa. R.C.P. No. 1035, which provides that summary relief may not be sought until after the pleadings are closed. The Court directed argument on Petitioners' motion for summary relief with the merits of Respondents' preliminary objections.

1. Act of November 6, 1987, P.L. 381, *as amended,* added by Section 5 of the Act of December 18, 1996, P.L. 1125 (Act 169), 35 P.S. §§ 10225.501–10225.508.

2. *John's Vending Corp. v. Secretary of Revenue,* 3 Pa.Cmwlth. 658, 284 A.2d 834 (1971), *rev'd,* 453 Pa. 488, 309 A.2d 358 (1973).

tax stamping agents and cigarette dealers were licensed to ensure that unstamped cigarettes were not illegally sold, thereby undermining the revenue to be produced by the tax.

The Court concluded that there was no relevance between the past derelictions of Martorano and his present ability to perform the duties required by his position. Moreover, the criminal convictions, having occurred 16 to 19 years in the past, were not relevant to predicting his future behavior. The Court stated:

> [W]here the prior convictions do not in any way reflect upon the appellant's present ability to properly discharge the responsibilities required by the position, we hold that the convictions cannot provide a basis for the revocation of a wholesaler's license.

*John's Vending*, 453 Pa. at 495, 309 A.2d at 362.

Here, Petitioners argue that like *John's Vending*, none of their convictions are materially relevant to their present ability to perform the duties required by their positions. In each case, the remoteness of Petitioners' convictions, coupled with their employment records demonstrate the lack of "material relevance between the past derelictions of [these individuals] and [their] present ability to perform duties required by the[ir] position[s]." *Id.* at 493, 309 A.2d at 361. We agree with Respondents, however, that the state interest sought to be protected in this case is greater than that in *John's Vending*. In *John's Vending*, "the legislature sought to ensure that unstamped cigarettes would not be illegally sold, thereby undermining the revenue to be produced by this tax." *Id.* Here, the interest sought to be protected is that of older adults, some of our most vulnerable citizens. This class of elderly adults has seen significant growth in numbers due to the advancements made by

medical science to such an extent that in their advanced age their physical condition and mental processes no longer protect them sufficiently from abuse, neglect, exploitation or abandonment. The legislature has recognized this need and is attempting to protect this class to the full extent possible. The protection of these individuals, many of whom cannot care for themselves and therefore rely on the assistance of others, is a far greater interest to protect than that of raising revenue through the collection of taxes. Section 102 of the Act, 35 P.S. § 10225.102 declares it to be "the policy of the Commonwealth of Pennsylvania that older adults who lack the capacity to protect themselves and are at imminent risk of abuse, neglect, exploitation or abandonment shall have access to and be provided with services necessary to protect their health, safety and welfare." The Act, concerned with protecting individuals who "lack the capacity to protect themselves" seeks to effectuate this goal by ensuring that those individuals who in the past have demonstrated an inability to abide by the law will not be the protectors of those who are unable to protect themselves.

Moreover, unlike *John's Vending* where the Court agreed that "the legislature did not intend to bring his convictions within the purview of [the] statute", *id.* at 492, 309 A.2d at 361, the legislature, by amending the Act in 1997 and removing the ten year look back period imposed in 1996, has clearly stated its intention that anyone convicted of any of the enumerated crimes at any time in their life, is precluded from working for facilities covered by the Act.

Generally, older individuals are placed in facilities covered by the Act not by choice, but by need. The legislature in attempting to protect those that cannot protect themselves has made it clear that criminal convictions imposed at any time, disqualify

an individual from serving as an employee of a facility serving older adults. Although Petitioners attack the constitutionality of the Act's amendments, the Pennsylvania Supreme Court has consistently stated that "[l]egislation will not be invalidated unless it clearly, palpably, and plainly violates the Constitution, and any doubts are to be resolved in favor of a finding of constitutionality." *Consumer Party of Pennsylvania v. Commonwealth,* 510 Pa. 158, 175, 507 A.2d 323, 331–32 (1986). "The role of the judiciary is not to question the wisdom of the action of [the] legislative body, but only to see that it passes constitutional muster." *Finucane v. Pennsylvania Milk Marketing Board,* 136 Pa. Cmwlth. 272, 582 A.2d 1152, 1154 (1990).

The legislature does not exceed its bounds merely because the classifications made by its laws are imperfect. If the classification has some reasonable basis, it does not offend the Constitution simply because the classification is not made with mathematic nicety or because in practice it results in some inequity. *Gondelman v. Commonwealth,* 520 Pa. 451, 462, 554 A.2d 896, 901 (1989). Although each of the Petitioners has apparently been a rehabilitation success and may be very worthy individuals at the present time, the legislature did not choose to take any risks by making an exception for them and we are not permitted to legislate judicial excep-

tions. The Act's restriction of prohibiting the employment of individuals who have in the past displayed the inability to make sound judgments, may be inequitable as applied to Petitioners, but it is a reasonable means of achieving the state purpose of protecting the aged and disabled.[3]

Accordingly, I would sustain petitioner's preliminary objections and deny Petitioner's Motion for summary relief.

Judge McGINLEY joins this dissent.

---

3. Nor do I find that the criminal records provisions of the Act violate the due process right of Petitioners by creating an irrebuttable presumption of unfitness for employment in any capacity covered by a health care facility. To be entitled to a due process hearing, one must have suffered by state action the loss of property or liberty interest. *Levine v. Department of Education,* 79 Pa.Cmwlth. 357, 468 A.2d 1216 (1984). Petitioners claim that in accordance with *Lyness v. State Board of Medicine,* 529 Pa. 535, 541, 605 A.2d 1204, 1207 (1992), a citizen's property right to pursue a lawful occupation is a substantial property

right subject to the full protective mechanisms of procedural due process. Although the Supreme Court in *Lyness* determined that a physician is entitled to due process, that case involved "a license to pursue a livelihood or engage in a profession, which has been held to be a property right protected by Article I, Section I of the Pennsylvania Constitution...." *Pennsylvania Game Commission v. Marich,* 542 Pa. 226, 231, 666 A.2d 253, 256 (1995). The facts in this case reveal, however, that a license or the revocation thereof is not involved.