600 A.2d 1293

**William T. JENKINS, Appellant,**

**v.**

**Mary Ann BOLLA, Bucks County Courier Times, and Mary Blakinger, Appellees.**

Superior Court of Pennsylvania.

Argued Oct. 24, 1991.

Filed Jan. 7, 1992.

120

Alan S. Gold, Philadelphia, for appellant.

Annetta F. Givhan, Philadelphia, for Bucks County Courier and Blakinger, appellees.

Before DEL SOLE, BECK and HUDOCK, JJ.

HUDOCK, Judge:

Appellant (Jenkins) brought an invasion of privacy suit against Appellees (Blakinger and the Courier Times) for publishing several articles which referred to Jenkins' multiple convictions for moral crimes. The trial court found, as a

matter of law, that Jenkins had failed to establish the requisite elements of an invasion of privacy claim. There being no genuine issues of material fact, the trial court held that the Courier Times and Blakinger were entitled to judgment as a matter of law. Jenkins appeals the entry of summary judgment against him. We affirm.

The facts, as found by the trial court, may be summarized as follows: In March, 1979, the Courier Times published in its newspaper a three-part series of articles written by its reporter, Mary Blakinger. The articles concerned boarding homes in Lower Bucks County used as residential placements for mentally ill and mentally handicapped individuals. At the time the articles were published, Jenkins operated such a boarding home. The staffs of state and county hospitals and medical facilities, the Department of Welfare, and the Bucks County Mental Health and Mental Retardation Department all referred patients to boarding homes, including Jenkins', for residential placement. State and county funds subsidized the cost of maintaining the residency of these mentally ill and mentally handicapped individuals.

In 1977, the Lower Bucks County Community Coordinating Committee (the Committee) was formed as a quasi-governmental body for the purpose of supervising these patient residences. The Committee also attempted to improve conditions for the mentally ill and mentally handicapped. To that end, the Committee promulgated a standard of automatic disapproval of a boarding home operated by any person with a criminal conviction, within the previous ten years, of serious crimes and, specifically, of sex-related crimes. Jenkins had been convicted of certain criminal acts of a sexual nature in 1942, in 1960, and in 1973. Because the 1973 conviction fell within the ten-year period adopted by the Committee, the Committee denied Jenkins' boarding home certification as a patient residence. Accordingly, the Committee recommended to state medical facilities that they no longer refer patients to Jenkins' boarding

home. The 1973 conviction was the only conviction on which the Committee was authorized to base its decision.

The articles in question referred to all of the foregoing but further revealed Jenkins' 1942 and 1960 convictions, as well as his commitment to Farview State Hospital. Jenkins argues on appeal that Blakinger and the Courier Times invaded his privacy by publishing information about the two "ancient" convictions (one 37 years old and the other 19 years old) and the institutional commitment (28 years old). Jenkins admits to the three convictions and the commitment and does not dispute the newsworthiness of the 1973 conviction. Rather, Jenkins challenges the publication of the earlier records which had no bearing on the Committee's decision to decertify his boarding house.

In reviewing an entry of summary judgment, this Court may disturb the order of the trial court only where there has been an error of law. This Court applies the same standard as the trial court, affirming a grant of summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Pa.R.C.P. 1035(b), 42 Pa.C.S.; *Weiss v. Keystone Mack Sales, Inc.*, 310 Pa.Super. 425, 430, 456 A.2d 1009, 1011 (1983). In deciding whether summary judgment should have been granted, this Court must examine the record in the light most favorable to the non-moving party. *Weiss,* 456 A.2d at 1011 (citations omitted).

Jenkins' action against Blakinger and the Courier Times is based on a theory of invasion of privacy. Before *Schnabel v. Meredith,* 378 Pa. 609, 107 A.2d 860 (1954), no such cause of action was considered to exist in Pennsylvania. Twenty years after *Schnabel,* the law solidified. In *Vogel v. W.T. Grant Co.,* 458 Pa. 124, 327 A.2d 133 (1974), the Pennsylvania Supreme Court adopted section 652 of the Restatement (Second) of Torts, Tentative Draft, as the law

of this Commonwealth. Pursuant to section 652, the cause of action for invasion of privacy is not one tort, but four. This complex of theories consists of (1) unreasonable intrusion upon the seclusion of another; (2) appropriation of another's name or likeness for commercial purposes; (3) unreasonable publicity given to another's private life; and (4) publicity that unreasonably places another in a false light before the public. *Curran v. Children's Service Center*, 396 Pa.Super. 29, 578 A.2d 8 (1990), *allocatur denied*, 526 Pa. 648, 585 A.2d 468; *Harris by Harris v. Easton Publishing Co.*, 335 Pa.Super. 141, 483 A.2d 1377 (1984). Jenkins asserts that the articles in question support a cause of action because they gave unreasonable publicity to his private life.[1] The publicity-given-to-private-life tort requires (1) publicity, given to (2) private facts, (3) which would be highly offensive to a reasonable person, and (4) is not of legitimate concern to the public. *Harris*, 483 A.2d at 1384.

The disputed element in this case is whether the convictions and commitment amount to private facts. A private fact is one that has not already been made public. *Harris by Harris*, 483 A.2d at 1384. Jenkins first argues that his convictions were initially made public upon their publication by the Courier Times in 1979. This argument is without merit because Jenkins has misunderstood the nature of a public fact. A fact contained within a public record is deemed a public fact. A public record is one necessarily kept in the discharge of duties imposed by law; any writing prepared, used or retained by an agency in pursuance of law or in connection with the transaction of public business is a public record. *Black's Law Dictionary* at 1107, 1145 (West, 5th ed., 1979). In this case, Jenkins'

---

**1.** Section 652D, entitled Publicity Given to Private Life, states:

One who gives publicity to matters concerning the private life of another, of a kind highly offensive to a reasonable man, is subject to liability to the other for invasion of his privacy.

Restatement (Second) of Torts § 652D (Tent.Draft No. 13, 1967). At trial, Jenkins also alleged a cause of action based on the false light theory of invasion of privacy (section 652E). He does not pursue that argument on appeal and so we do not address it.

convictions were part of the public court records of Bucks County. As such, his convictions were facts of legitimate concern to the public and available to the public for inspection. *Harris by Harris*, 483 A.2d at 1385. Whether they may be published with impunity, however, is another question which we discuss below.

Jenkins next argues that this Commonwealth's public policy favors the rehabilitation and integration into society of former inmates. *See, Secretary of Revenue v. John's Vending Corp.*, 453 Pa. 488, 493, 309 A.2d 358, 362 (1973) (corporation's wholesale cigarette dealer's license could not lawfully be revoked because corporation's majority stockholder had been convicted of unrelated criminal offense almost twenty years earlier). To permit newspapers to publish, without limitation, convictions that occurred so long ago undermines that policy, according to Jenkins. Again Blakinger and the Courier Times defend, contending that no liability arises for the disclosure of facts that are already public. *Schnabel*, 107 A.2d at 863 (affirmed compulsory non-suit of plaintiff's invasion of privacy claims based on post-acquittal publication of plaintiff's arrest); Restatement (Second) of Torts § 652D, comment b (1977) (no liability where defendant merely gives further publicity to information about plaintiff's life that is matter of public record). While we recognize the merit of Jenkins' public policy argument, we are hesitant to apply it in this case; Jenkins has had forty plus years since his first conviction in which to rehabilitate himself. Publication of evidence that he has not succeeded does not undermine the policy of rehabilitation.

Jenkins finally argues that, because so much time has lapsed, the 1942 and 1960 convictions and the Farview commitment have faded from the public record and become private matters. Blakinger and the Courier Times counter that once a conviction appears on the public record, it remains accessible to the public, including the media. We agree with the theory of this latter argument to a point. The mere passage of time does not wipe away the notoriety

occasioned by Jenkins' commission of these crimes. *Schnabel*, 107 A.2d at 863. With time, however, a public record can fade into a private fact, thereby losing its protected status, *unless* some compelling reason warrants maintaining public awareness of the record. The most compelling reason for publishing an ancient record is the existence of a substantial nexus between a person's past crimes, their current activity, and the public interest. We find such a nexus in this case justifying the publication of Jenkins' past convictions.

This Court recognizes the need for a balance between an individual's right to privacy and the dissemination of information pertaining to the public interest. A matter of public interest concerns the community-at-large's pecuniary well-being or its legal rights and liabilities. Public interest does not mean anything so narrow as mere curiosity. *Black's Law Dictionary* at 1106 (West, 5th ed.1979). We agree with the trial court that these articles addressed a matter of public concern, in that public funds subsidized Jenkins' boarding home. Moreover, the community's mentally ill and mentally handicapped were referred to such boarding homes by state medical officials. Operation of a residence for such defenseless individuals by a convicted sex offender would surely cause unrest in a community and among the patients' loved ones. Jenkins' 1973 conviction was enough to earn his boarding house "disapproval" from the Committee. He thus argues that any further revelations about his past sexual misconduct were unnecessary and therefore unrelated to any legitimate public purpose of scrutinizing such boarding homes. We disagree. "Disapproval" by the Committee is only advisory; the county cannot prevent the state from referring patients. Of public interest, then, is the possibility that Jenkins may continue to receive state referrals, as well as private ones, and continue to care for those already entrusted to him in spite of a long history of aberrant sexual behavior. The other convictions also serve to enforce his propensity for criminal acts of a sexual nature. Jenkins

has an ongoing record of sexual crimes spanning almost forty years. Despite appearances, Jenkins has not reverted to "the lawful and unexciting life led by the great bulk of the community" as to no longer be a proper subject of public interest. Restatement (Second) of Torts § 652D, comment k (1977). Information of his record, past and present, is of vital concern to a public which puts its trust in the individuals caring for the mentally ill and mentally handicapped.

While the two ancient convictions and the commitment in this case may have retreated from the front page, they are still of interest to the public in light of Jenkins' current activity; the publication of these facts, therefore, cannot support an invasion of privacy claim. The trial court did not err in entering summary judgment in favor of the newspaper and its reporter.

Judgment affirmed.