**Bowers v. Gillin**

*Thomas J. Sibert,* for plaintiffs.
*Louis C. Schmitt,* for defendants.

 LONG, *P.J.,* LEAHEY & KRUMEN-ACKER, *JJ.*

LEAHEY, *J.,* April 21, 1997—Before the court is defendants' motion for summary judgment, which, for the following reasons, we grant.

On January 6, 1995, plaintiff Robert Lee Bowers was operating a motor vehicle which was struck by an automobile driven by defendant Ryan Gillin.[1] As a result of the accident, plaintiff Denise Bowers, a passenger in her husband's vehicle, suffered injuries, including a medial subtalar dislocation of her right foot.

At the time of the accident, plaintiffs were insured under an automobile insurance policy wherein they had elected a limited tort option provided in section 1705 of the Motor Vehicle Financial Responsibility Law. Section 1705(d) of the MVFRL provides, in pertinent part:

"*(d) Limited tort alternative.*—Each person who elects the limited tort alternative remains eligible to seek compensation for economic loss sustained in a motor vehicle accident as the consequence of the fault of another person pursuant to the applicable tort law. Unless the injury sustained is a serious injury, each person who is bound by the limited tort election shall be precluded from maintaining an action for any noneconomic losses, . . ." 75 Pa.C.S. §1705(d).

---

1. The vehicle driven by Ryan Gillin was owned by defendant Dennis Gillin.

"Serious injury" is defined as "[a] personal injury resulting in death, serious impairment of body function or permanent serious disfigurement." 75 Pa.C.S. §1702.

On February 22, 1996, plaintiffs filed a complaint against defendants seeking damages for the injuries Mrs. Bowers sustained as a result of the accident. In paragraph 8 of their complaint, plaintiffs allege that as a result of the accident, "wife-plaintiff suffered serious and permanent injuries and suffered serious and permanent impairment of her bodily functions." Complaint, at ¶8. On February 11, 1997, defendants filed a motion for summary judgment arguing that plaintiffs cannot recover noneconomic damages under the limited tort provisions of their insurance policy because the injuries sustained by Mrs. Bowers did not involve a serious impairment of body function and, thus, were not "serious."

Pennsylvania Rule of Civil Procedure 1035.2 provides:

*"Rule 1035.2. Motion*

"After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

"(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

"(2) if, after the completion of discovery relevant to the motion, including production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential

to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury." Pa.R.C.P. 1035.2, 42 Pa.C.S.

In considering a motion for summary judgment, this court must examine the record in the light most favorable to the non-moving party, accept as true all well-pleaded facts and give that party the benefit of all reasonable inferences drawn from those facts. Summary judgment may be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Summary judgment should be granted only in cases that are free and clear from doubt. *Dibble v. Security of America Life Insurance,* 404 Pa. Super. 205, 590 A.2d 352 (1991); *Lower Lake Dock Co. v. Messinger Bearing Corp.,* 395 Pa. Super. 456, 577 A.2d 631 (1990); *Jenkins v. Bolla,* 411 Pa. Super. 119, 600 A.2d 1293 (1992); *Garcia v. Savage,* 402 Pa. Super. 324, 586 A.2d 1375 (1991).

In addressing plaintiffs' motion, we are guided by *Dodson v. Elvey,* 445 Pa. Super. 479, 665 A.2d 1223 (1995) (en banc), *alloc. granted,* 544 Pa. 608, 674 A.2d 1072 (1996). In *Dodson,* the Superior Court was presented with the issue of whether it was the function of the jury or of the trial judge to make the initial, threshold determination of whether a plaintiff suffered serious injury. The court, in finding that such determination must be made on case-by-case basis, instructed: "upon the filing of a motion for summary judgment, where there is no substantial dispute of material fact that the plaintiff has not met the 'serious impairment of body function' threshold, or that the plain-

tiff has indeed met the threshold, the court should make the determination as a matter of law. If, upon review of the undisputed record, the threshold has not been met, the case should be dismissed. If, on the other hand, the evidence conclusively establishes that the plaintiff has suffered 'serious impairment of bodily function,' then the jury may decide only the issues of liability and damages. We limit the jury's role to a finding of liability and damages in such a case because to do otherwise would put the plaintiff to the double burden of showing 'serious impairment of body function' twice, once to the judge and again to the jury. Finally, if there is a substantial dispute of fact on the threshold issue, the question is one for the jury." *Dodson, supra* at 497, 665 A.2d at 1232. (footnote omitted)

In determining whether plaintiffs have presented sufficient evidence to create a genuine issue of material fact on the issue of whether Mrs. Bowers suffered a "serious impairment of bodily function," this court is guided by the following:

"The 'serious impairment of body function' threshold contains two inquiries:

"(a) What body function, if any, was impaired because of injuries sustained in a motor vehicle accident?

"(b) Was the impairment of body function serious? The focus of these inquiries is not on the injuries themselves, but on how the injuries affected a particular body function. Generally, medical testimony will be needed to establish the existence, extent, and permanency of the impairment . . . . In determining whether the impairment was serious, several factors should be considered: the extent of the impairment, the particular

body function impaired, the length of time the impairment lasted, the treatment required to correct the impairment, and any other relevant factors." *Id.* at 499, 665 A.2d at 1233-34 (quoting *DiFranco v. Pickard,* 427 Mich. 32, 39, 398 N.W.2d 896, 901 (1986)).

With these standards in mind, we will review the record before us. Mrs. Bowers, who was age 27 at the time of the accident and the mother of three small children, suffered a medial subtalar dislocation of her right foot. She was treated by Dr. Don A. Lowry, an orthopedic surgeon, and was under his care for approximately 10 months following the accident. Dr. Lowry submitted a letter report dated November 10, 1995. His report, which is addressed to Mrs. Bowers' attorney, reads as follows:

"Denise is a 27-year-old female who was involved in a motor vehicle accident on January 6, 1995 in which she was an unrestrained passenger. Their vehicle allegedly struck another vehicle head-on. I examined her in the ER and she was noted to have a medial subtalar dislocation of the right foot. Under IV sedation, the subtalar dislocation was reduced and she was placed in a cast. She also had had some numbness at the time of injury. I subsequently kept her in a cast up until March 3, 1995 at which time she was placed in a walker boot and began a motion program. Her nerve paresthesias had resolved. She did develop some posterior tibialis tendinitis which was treated with anti-inflammatory medication and physical therapy, and subsequently over time she has done quite well. I last saw her October 24, 1995 at which time she had only an occasional ache in the ankle but by and large was back to normal activities. Her examination revealed

only minimal tenderness over the posterior tibialis tendon, but otherwise was unremarkable.

"I certainly feel that the automobile accident was the causative factor in her subtalar dislocation. I think her prognosis is good, though I would expect that she would continue to have an occasional ache in the ankle, especially with heavy activities, but I would not anticipate her being significantly limited in her activities. Objective impairment rating would be very minimal and probably only 1 percent to 2 percent total body impairment.

"I think that she can wear basically any type of shoe, though she may be more comfortable in high-top tennis shoes if she is going to be on her feet for an extended period of time. She can use her own discretion for this." Defendants' motion for summary judgment, exhibit "G."

Mrs. Bowers' deposition was taken by defendants on December 20, 1996. A copy of that deposition is attached to defendants' motion for summary judgment as exhibit "F." Mrs. Bowers testified, inter alia, that following the accident, her activities and her ability to care for her children were severely limited. She stated that presently she can no longer take her children for long walks in the woods and can no longer play kickball and go dancing. Further, she testified that she cannot stand on her feet for long periods of time and is unable to mow the grass except on level areas. She indicated that if she is on her feet too long, her right foot will start to hurt, and if she moves it in a "different way," she will experience a sharp pain in the back of her ankle, and when she stretches, she will sometimes get

a "bad pain" in the ankle. She testified that she is not able to play volleyball to the extent that she used to and must "sit on the side a lot." When questioned about her housework, she stated as follows:

"It makes it hard doing laundry because my basement's—I mean my laundry room is in the basement. And I take the clothes from the third floor to the basement, and it makes it kind of hard doing two flights of steps all the time. So it's—

"Q. Are you able to do that at all?

"A. Yeah, but not, not to a constant, not the way I used to.

"Q. How about any other household chores or activities around the house that you can't do or can't do as well now?

"A. I take more breaks now than I used to because if I'm moving around a lot because it will still start bothering me. If I move a different way I'll get sharp pains, so I'll sit down for a little while and start again." Deposition 12/20/96, at pp. 38-39.

Finally, she testified that, at the time her deposition was taken, she did have plans to return to work at a convenience store, but on a part-time basis.

Given our review of the record, we find that defendants' motion for summary judgment must be granted. There is no genuine issue of material fact with respect to the nature and extent of Mrs. Bowers' injuries. While Mrs. Bowers obviously suffered an impairment of her body function, we find, after focusing on how her injuries affected the function of her injured foot, the extent and the duration of the impairment, and the treatment required to correct the impairment, there is

no triable issue of fact concerning the question of whether her injury was "serious." It is clear to this court that her injury was not serious given the standards enumerated in *Dodson.* Further, "where a motion for summary judgment has been made and properly supported, parties seeking to avoid the imposition of summary judgment must show by specific facts in their depositions, answers to interrogatories, admissions or affidavits that there is a genuine issue for trial." *Marks v. Tasman,* 527 Pa. 132, 135, 589 A.2d 205, 206 (1991). Additionally, it is important to note that a plaintiff, to cross over the serious injury threshold, must show a material dispute of fact by objective medical evidence. "[A] plaintiff may not create a triable issue of fact with subjective evidence only." *Dodson, supra* at 497-98, 655 A.2d at 1232. Here, the only objective medical evidence submitted to us by either party is the report of Mrs. Bowers' attending physician, Dr. Lowry, which, standing by itself, clearly indicates that Mrs. Bowers' injury was not "serious" under the standards set forth in *Dodson.* According to the report, Dr. Lowry reduced Mrs. Bowers' ankle dislocation in the emergency room under an IV sedation. She was then placed in a cast for two months. She developed tendinitis which was successfully treated with anti-inflammatory medication and physical therapy and has subsequently done "quite well." Dr. Lowry reported that as of October 24, 1995, Mrs. Bowers had experienced only "an occasional ache" in her ankle and "by and large was back to normal activities." He stated that "an occasional ache" in her ankle would be expected "especially with heavy activities," but he did "not anticipate her being significantly limited in her activities." He estimated her "ob-

jective impairment rating" as being "very minimal" and "probably 1 percent to 2 percent total body impairment."

This court is always reluctant to enter summary judgment. However, based on all the facts presented to us in the instant matter, we conclude that defendants' right to judgment as a matter of law is so free and clear from doubt that its entry is mandated. The impairment of body function suffered by Mrs. Bowers did not involve a serious impact for an extended period of time on her life, and while her impairment has imposed a slight limitation on her normal activities, it clearly has not substantially interfered with those activities. See *Dodson* at 499, 655 A.2d at 1234.

Accordingly, we enter the following:

### ORDER

Now, April 21, 1997, for the reasons stated in the foregoing opinion, defendants' motion for summary judgment is hereby granted, and plaintiffs' complaint is dismissed.