

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-26-2005

# Bowley v. City Uniontown Pol

Precedential or Non-Precedential: Precedential

Docket No. 04-2352

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Bowley v. City Uniontown Pol" (2005). *2005 Decisions*. Paper 1269.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1269

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-2352

———

JAMES L. BOWLEY

v.

CITY OF UNIONTOWN POLICE DEPARTMENT;
HERALD STANDARD; CITY OF UNIONTOWN,
a municipal corporation; OFFICER FRED BALSLEY,
individually and in his capacity as a police officer

JAMES L. BOWLEY, a minor, by and
through, JAMES C. BOWLEY, guardian
ad litem, his natural father,
                                    Appellant

———

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 03-cv-01144)
District Judge: Honorable Joy F. Conti

———

Argued March 8, 2005

Before: NYGAARD, McKEE, and RENDELL, Circuit Judges.

(Filed: April 26, 2005)

Peter M. Suwak, Esq. (Argued)
P. O. Box 1
Pete's Surplus Building
Washington, PA 15301
    Counsel for Appellant

Charles Kelly, Esq. (Argued)
Kristin L. Anders, Esq.
Sinclair, Kelly, Jackson, Reinhart & Hayden
501 Corporate Drive
Suite 200
Canonsburg, PA 15317
    Counsel for Appellee

_____

## OPINION OF THE COURT

_____

NYGAARD, <u>Circuit Judge</u>.

This case arises from Appellant James L. Bowley's arrest for allegedly raping a minor while a minor himself, and the subsequent truthful publication of the fact of that arrest by Appellee Uniontown Herald Standard. As a result of the publication, Bowley sued the Herald Standard for a violation of the Pennsylvania statute prohibiting the disclosure of juvenile law enforcement records and for the tort of invasion of privacy. We must now decide whether imposition of civil liability upon the Herald Standard for its actions with regard to Bowley would be consistent with the First Amendment. The District Court held that

it would not and granted the Herald Standard's motion to dismiss. Because we agree that under these facts, the First Amendment provides the Herald Standard with a shield from liability, we will affirm.

I.

The Herald Standard published an article reporting that Bowley, a minor, had been arrested for allegedly raping a seven-year-old girl he was babysitting. In its entirety, the article stated:

> City police arrested James Landon Bowley, 15, of Farmington Sunday on charges he allegedly raped a 7-year-old girl he was babysitting at her Uniontown home Friday evening.
> According to police, the girl's mother took her daughter to Uniontown Hospital after the girl complained of injury and bleeding Sunday afternoon.
> Bowley turned himself in to police Sunday at 5:45 p.m. and was charged with two counts of rape and one count each of indecent assault, involuntary deviate sexual intercourse and indecent exposure. Charges against Bowley were filed at the Connellsville Juvenile Detention Facility, where he is being held, police said.[1]

(App. at 30a). According to Bowley, the Herald Standard received the information concerning his arrest from Uniontown Police Officer Fred Balsley.

---

[1] Although unclear from the record, it does not appear that Bowley was actually prosecuted.

After seeing the report of his arrest in the newspaper, Bowley brought suit in the Court of Common Pleas of Fayette County, Pennsylvania against the Herald Standard, the City of Uniontown, the City of Uniontown Police Department, and Balsley.[2] He alleged that the release of the fact and details of his arrest to the Herald Standard, and the subsequent publication of that information by the Herald Standard, violated his rights under both state and federal law. Against the Herald Standard, Bowley brought claims for breach of confidentiality in violation of 42 PA. CONS. STAT. § 6308, which generally prohibits the disclosure of juvenile law enforcement records, and for the tort of invasion of privacy. Against all other Defendants, Bowley brought these state-law claims in addition to a claim under 42 U.S.C. § 1983 for violation of his civil rights.

Because there was a federal claim, Defendants removed the case to the Western District of Pennsylvania. The Herald Standard then filed a motion to dismiss for failure to state a claim. The District Court, relying on the Report and Recommendation from

_____

[2] At the time the case was filed, Bowley, born on November 17, 1985, was a minor. Thus, he brought the case through James C. Bowley, his father and guardian *ad litem*.

4

the Magistrate Judge, granted that motion. Because Bowley has since settled with the remaining Defendants and stipulated to a voluntary dismissal of his claims against them, the District Court's grant of the motion to dismiss is a final order, which we have jurisdiction to review pursuant to 28 U.S.C. § 1291.

## II.

We exercise plenary review over the grant of a motion to dismiss. *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1411 (3d Cir. 1993). We must accept as true all factual allegations in the complaint and draw all reasonable inferences in the light most favorable to the plaintiff. *Id*. Only if it is certain that no relief could be granted under the facts pleaded may we affirm. *Id.*

## III.

As explained, Bowley has stated two claims against the Herald Standard, each stemming from the publication of information concerning his arrest. He first claims a breach of confidentiality in violation of 42 PA. CONS. STAT. § 6308.[3] He

---

[3] Section 6308 of Pennsylvania's Judicial Code provides in relevant part:

> The contents of law enforcement records and files concerning a child shall not be disclosed to the

5

also claims a tortious invasion of his privacy.  The Herald

Standard argues that the breach of confidentiality claim is not

cognizable under Pennsylvania law and that Bowley cannot

establish each element of the invasion of privacy claim.  It

argues in addition, that the First Amendment shields it from civil

liability for publishing the article, which contained truthful

information received from the police.  We agree with the Herald

Standard that the First Amendment shields it from liability on

these facts.[4]

There no doubt exists a tension between the First

Amendment right to a free press and an individual's statutory

and common law right to privacy, complicated here because the

individual in question is a juvenile.  It is a tension the Supreme

Court has had several occasions to address.  *See Florida Star v.*

---

> public except if the child is 14 or more years of age
> at the time of the alleged conduct and if any of the
> following apply:
>
> (i) The child has been adjudicated delinquent by a
> court . . . [or]
> (ii) A petition alleging delinquency has been filed by
> a law enforcement agency . . .

[4] For that reason  we need resolve the questions of state law before us.  In particular, we need not decide whether 42 PA. CONS. STAT. § 6308 creates a cause of action under Pennsylvania law.

*B.J.F.*, 491 U.S. 524 (1989); *Smith v. Daily Mail Publ'g*, 443 U.S. 97 (1979); *Oklahoma Publ'g Co. v. Oklahoma County Dist. Ct.*, 430 U.S. 308 (1977); *Cox Broad. Corp. v. Cohn*, 420 U.S. 469 (1975). While the Court has upheld a newspaper's right to publish in each of these cases, it has been careful to decide each upon its discrete facts, *Florida Star*, 491 U.S. at 530, and has declined to hold that publication of truthful information is *per se* protected by the First Amendment, *id*. at 532. Nevertheless, the Court has made clear that as a general matter, "state action to punish the publication of truthful information seldom can satisfy constitutional standards." *Daily Mail Publ'g*, 443 U.S. at 102. In fact, it has held that "'if a newspaper lawfully obtains truthful information about a matter of public significance then state officials may not constitutionally punish publication of the information, absent a need to further a state interest of the highest order.'" *Florida Star*, 491 U.S. at 533 (quoting *Daily Mail Publ'g*, 443 U.S. at 103). A newspaper, moreover, may be punished consistent with the Constitution only when the punishment is narrowly tailored to serve the purported state interest. *Florida Star*, 491 U.S. at 541. Thus, in order to

7

determine whether the First Amendment permits the imposition of civil liability upon the Herald Standard for publishing the article concerning Bowley's arrest, we must consider: (A) whether the information was truthful and lawfully obtained; (B) whether the information concerned a matter of public significance; and (C) whether the imposition of liability would be the most narrowly tailored way to serve a state interest of the highest order.

Although the truthfulness of the article is not in dispute, the parties disagree as to whether other aspects of this test have been satisfied. They disagree as to whether the Herald Standard lawfully obtained information concerning Bowley's arrest. They disagree as to whether Bowley's arrest is a matter of public significance. And they disagree, finally, as to whether protecting the anonymity of an arrested juvenile is a need of the "highest order." We address each of these disputes in turn.

## A.

Bowley contends that absent discovery, it is unclear whether the Herald Standard lawfully obtained the information in the article. Thus, he asserts, the case should be remanded. In

light of the allegations in the Complaint, however, Bowley can prove no set of facts establishing that the Herald Standard obtained the information unlawfully.

According to the Complaint, Officer Balsley informed the Herald Standard of Bowley's arrest. (App. at 13a). Although Balsley violated Pennsylvania law prohibiting the release of juvenile arrest records by doing so, *see* 42 PA. CONS. STAT. § 6308, his unlawful release of the information does not make receipt of that information by the Herald Standard unlawful. Section 6308 prohibits only the *disclosure* of juvenile law enforcement information, not the *receipt* of such information.[5] *See id.* ("The contents of law enforcement records and files concerning a child shall not be *disclosed* to the public. . . .") (emphasis added); *cf. Florida Star*, 491 U.S. at 536 ("Even assuming the Constitution permitted a State to proscribe *receipt* of information, Florida has not taken this step. . . .").

Moreover, the Supreme Court held in *Florida Star* that

---

[5] For the purposes of the First Amendment, whether the Herald Standard's subsequent disclosure of the information violated section 6308 is irrelevant to the question of whether the newspaper lawfully obtained the information it disclosed.

failure by the police to comply with a Florida statute prohibiting the release of a rape victim's name did not render unlawful a newspaper's resultant receipt of the protected information. 491 U.S. at 536. The Court explained, "[n]or does the fact that the Department apparently failed to fulfill its obligation under . . . [the non-disclosure statute] make the newspaper's ensuing receipt of this information unlawful." *Id.* The Court reiterated this sentiment in *Bartnicki v. Vopper*, 532 U.S. 514, 535 (2001), holding: "a stranger's illegal conduct does not suffice to remove the First Amendment shield from speech about a matter of public concern." Similarly in the case before us, Balsley's failure to comply with section 6308 does not render the Herald Standard's subsequent receipt of the information unlawful. Bowley, therefore, cannot prove that the Herald Standard unlawfully obtained the information at issue under the facts alleged.

B.

The fact of Bowley's arrest is a matter of public concern.[6]

---

[6] We recognize, however, that there might be cases where the *details* of the crime, as opposed to its mere occurrence, would not necessarily be of public concern. *See e.g., Foretich v. Lifetime Cable*, 777 F. Supp. 47, 50 (D.D.C. 1991) ("The Court acknowledges that the sexual abuse of children is an issue worthy of public attention, but it does not believe as a matter of law, that

10

In *Florida Star,* the Supreme Court held that the commission and investigation of violent crimes—in that case like in this one, rape—are matters of "paramount public import."  491 U.S. at 536–37; *accord Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 492 (1975) ("The commission of crime, prosecutions from it, and judicial proceedings arising from the prosecutions . . . are without question events of legitimate concern to the public. . . .").  The rape of a minor is a crime of violence.  Bowley's arrest for allegedly committing that crime is within the realm of legitimate public concern.[7]  Although this case is somewhat complicated by the fact that the alleged offender was himself a minor, we think the legitimacy of public concern regarding the rape of a minor cannot seriously be doubted, regardless of the

---

the specific facts about the alleged abuse of this one particular child [ ] as described by the child on the videotape in question are of legitimate public concern.").

[7]  Incidentally, it is for this reason that Bowley's claim for invasion of privacy fails.  Although the tort of invasion of privacy is actually four distinct torts, only one is presently at issue: publicity given to private life.  Under Pennsylvania law, the elements of this tort are: 1) giving publicity; 2) to private facts; 3) of a kind highly offensive to a reasonable person; and 4) *which are not of legitimate concern to the public.  Jenkins v. Bolla*, 600 A.2d 1293, 1296 (Pa. Super. Ct. 1992) (emphasis added).  As explained in the text, Bowley's arrest is of legitimate public concern.  Thus, he cannot establish the elements of his invasion of privacy claim.

11

age of the accused.

## C.

Because the information published by the Herald Standard was truthful, lawfully obtained, and concerning a matter of public significance, the First Amendment shields the Herald Standard from civil liability unless the imposition of liability is narrowly tailored to serve an interest of the highest order. Even if, as Bowley asserts, protecting the anonymity of an arrested juvenile is an interest of the highest order, under the facts of this case, we hold that subjecting the Herald Standard to civil liability is not the most narrowly tailored means of serving that interest.

The Supreme Court has held that when the government itself inappropriately releases otherwise-confidential information "the imposition of damages against the press for its subsequent publication can hardly be said to be a narrowly tailored means of safeguarding anonymity."[8] *Florida Star*, 491 U.S. at 538. Indeed, when the government has stewardship over confidential

---

[8] The anonymity to be protected in that case was that of a rape victim. However, the same rationale applies with equal force to the anonymity of the alleged offender.

12

information, not releasing the information to the media in the first place will more narrowly serve the interest of preserving confidentiality than will punishing the publication of the information once inappropriately released. *See id*. Because it is alleged in the Complaint, we assume that Balsley, a government employee, provided the Herald Standard with the information in the article, in violation of section 6308's non-disclosure requirement. Accordingly, imposing civil liability upon the Herald Standard is not the most narrowly tailored way to protect Bowley's anonymity. Rather, it would have been far less drastic for Balsley to have simply not disclosed the information.

## D.

A newspaper may not be held liable for its publication of lawfully obtained, truthful information on a matter of public significance unless imposing liability would be the most narrowly tailored means of serving a state interest of the highest order. *Id*. at 541. The information contained in the article published by the Herald Standard was truthful, lawfully obtained, and concerned a matter of public significance. We need not decide whether protecting the anonymity of juvenile

13

offenders is a state interest of the highest order, because when the government is ultimately responsible for the disclosure of information, imposing civil liability upon a newspaper for the subsequent publication of that information is not the most narrowly tailored means of serving any purported interest. Bowley, therefore, cannot seek civil damages against the Herald Standard consistent with the First Amendment. He must instead rest his hopes for restitution "upon the willingness of the government to compensate victims for their loss of privacy" stemming from the government's inappropriate release of confidential information. *Id*. at 538.

## IV.

Bowley cannot maintain his action against the Herald Standard consistent with the First Amendment. We will affirm the District Court's grant of the Herald Standard's motion to dismiss.