**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1095
_____

KOBE PINKNEY

v.

MEADVILLE, PENNSYLVANIA; PATROLMAN JARED
FRUM; ALLEGHENY COLLEGE; DUNCAN FREELAND;
JOE HALL

JARED FRUM,
Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 1:19-cv-00167)
Chief Magistrate Judge: Honorable Richard A. Lanzillo
_____

Argued: November 8, 2023

Before: RESTREPO, BIBAS, and SCIRICA, *Circuit Judges*

(Filed: March 12, 2024)

Carol A. VanderWoude      **[ARGUED]**
MARSHALL DENNEHEY
2000 Market Street, Suite 2300
Philadelphia, PA 19103

Patrick M. Carey
MARSHALL DENNEHEY
717 State Street, Suite 701
Erie, PA 16501
    *Counsel for Appellant*

Earl D. Raynor, Jr.      **[ARGUED]**
1800 John F. Kennedy Boulevard
3rd Floor, Box 103
Philadelphia, PA 19103
        *Counsel for Appellee*

————————————

OPINION OF THE COURT

————————————

BIBAS, *Circuit Judge*.

Police may not fake facts to find probable cause. Officer Jared Frum applied for an arrest warrant. In his application, he allegedly turned a shaky witness statement into a confident identification and left out evidence that undermined the identification's reliability. A judge then relied on this altered story to issue a warrant to arrest Kobe Pinkney. But because there was no probable cause to arrest him, Officer Frum violated his clearly established rights.

## I. The Wrongful Arrest

On this motion to dismiss, we take the factual allegations as true: Late one Saturday night, Officer Frum was near a crowded college bar when he saw two men carrying Rhett Happel. Happel's face had been smashed so badly that his eye was swollen shut. But he could not remember exactly what had happened.

So Officer Frum started investigating. He learned that Happel had allegedly drugged a woman the night before. And a witness accused that woman of punching Happel (though the witness later recanted). Happel also told him that two men, Joe Hayes and Jared Shaw (the woman's boyfriend), had threatened him just hours before the attack.

A few days later, Duncan Freeland told Officer Frum that he had seen the attack. Freeland described Happel's attacker as "an African American boy about 6' … tall" with "some kind of braids." App. 646. Though Freeland had not recognized the attacker at first, a friend later tried to jog his memory by sending him three Facebook photos. In all three, Pinkney was the only black man. Freeland thought that Pinkney "look[ed] an awful lot like" the attacker. App. 648.

Officer Frum never probed how well Freeland could observe the assault. Nor did he ask how Pinkney resembled the attacker. Rather, he asked several leading questions assuming that Pinkney did it:

> **Officer Frum:** And all three [photos of Pinkney] look like the gentleman that was at the bar Saturday night?

**Freeland:** Minus the hair in the last two, but yeah.

**Officer Frum:** Okay. Those same facial features, same—

**Freeland:** Yeah.

…

**Officer Frum:** Okay. And—but you said you just seen him tap Rhett on the shoulder, Rhett looked around. You had seen Kobe throw the punch.

**Freeland:** Yeah.

App. 648–49. Though Freeland answered these leading questions "yeah," he never identified Pinkney as the attacker in his own words.

Based on the interview, Officer Frum sought a warrant to arrest Pinkney. The probable-cause affidavit that he wrote up and submitted to the judge said:

> [Freeland] stated that they were contacted by Happ[el]'s friend … and was sent [a] picture of a white male and a black male. [T]hey recognized the white male as Jared Shaw and the black male as Kobe Pinkney. [T]hey recognized Pinkney as the black male that punched Happel. They stated that [the friend] sent two more pictures and they were both pictures of Pinkney.

App. 218. Based on this affidavit alone, the judge issued the arrest warrant. Police then pulled Pinkney out of a college class and arrested him. Soon, though, witnesses came to his defense,

and Freeland recanted his identification. Prosecutors dropped all charges.

Pinkney sued Officer Frum and others for false arrest and malicious prosecution. The District Court twice considered Officer Frum's claim of qualified immunity. First, it denied his motion to dismiss based on the pleadings. On appeal, we remanded, instructing the court to consider the audiotape of Freeland's interview. *Pinkney v. Meadville*, No. 21-1051, 2022 WL 1616972, at *3 (3d Cir. May 23, 2022). After reviewing the recording, the District Court again denied Officer Frum's motion to dismiss. Then he filed this interlocutory appeal.

At this stage, we view the facts in the light most favorable to Pinkney. *Xi v. Haugen*, 68 F.4th 824, 832 (3d Cir. 2023). Because the District Court made no factual findings, it denied qualified immunity based on the law. So we have appellate jurisdiction to hear this legal challenge to a denial of qualified immunity. *Dennis v. City of Philadelphia*, 19 F.4th 279, 284 (3d Cir. 2021). We review all questions of law de novo. *Starnes v. Butler Cnty. Ct. of Common Pleas, 50th Jud. Dist.*, 971 F.3d 416, 424 (3d Cir. 2020).

Officer Frum argues that qualified immunity shields him because he had probable cause for the arrest. To resolve that defense, we must decide two issues: First, we consider whether he plausibly violated a constitutional right. If so, we ask if a reasonable officer would have known that Officer Frum's alleged conduct violated Pinkney's rights. *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001).

## II. BASED ON THE PLEADINGS, OFFICER FRUM VIOLATED PINKNEY'S CONSTITUTIONAL RIGHTS

Officer Frum violated Pinkney's rights if he lacked probable cause to arrest him. Normally, to evaluate probable cause, we would ask whether a reasonable officer would have found a fair probability that there had been an assault and that Pinkney had committed it. *Andrews v. Scuilli*, 853 F.3d 690, 698 (3d Cir. 2017). But when, as here, a judge issues an arrest warrant, we defer to it unless the officer misrepresented material information to get the warrant. *Id.* at 697–98.

So we must resolve two questions:

> (1) As alleged, did Officer Frum "knowingly and deliberately, or with a reckless disregard for the truth, ma[k]e false statements or omissions that create[d] a falsehood in applying for a warrant"? *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997).

> (2) Were those false statements or omissions "material, or necessary, to the finding of probable cause"? *Id.*

Because we answer yes to both questions, Officer Frum violated Pinkney's rights.

### A. Officer Frum recklessly disregarded the truth in the warrant application

According to the pleadings, Officer Frum made three reckless errors in his affidavit: (1) overstating Freeland's certainty, (2) overlooking an inconsistency in Freeland's statement, and (3) leaving out key facts.

First, in applying for the arrest warrant, Officer Frum wrote that Freeland "recognized" Pinkney as the attacker. App. 218. That implied that Freeland had identified Pinkney positively and unequivocally. Yet Freeland had never expressed such certainty. Rather, Officer Frum asked leading questions that suggested that Pinkney looked like the attacker. And to each question, Freeland simply responded "yeah." App. 648–49.

But leading questions increase the risk of a false identification. *See* Third Circuit Task Force, *2019 Report on Eyewitness Identifications*, 92 TEMPLE L. REV. 1, 16 (2019). So, though Officer Frum could ask these questions, he could not assume that, by answering them, Freeland was making a confident eyewitness identification. Plus, Freeland said only that Pinkney "look[ed] an awful lot like" the attacker, not that he *was* the attacker. App. 648.

Second, Officer Frum overlooked a discrepancy. One of the few things Freeland remembered was the attacker's hairstyle, but he twice sidestepped describing Pinkney's hair. When asked if Pinkney had braids, Freeland replied: "Looked like he had something. So maybe—." *Id.* Later, he said Pinkney looked like the attacker "[m]inus the hair in the last two [photos]." *Id.* He had good reason to hedge: Pinkney never wore braids. But Officer Frum brushed aside Freeland's hedging. In bolstering Freeland's identification, he "had obvious reasons to doubt the accuracy of the information he reported." *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000) (internal quotation marks omitted).

Finally, Officer Frum omitted three key facts. He did not disclose that the victim had been threatened by other men, that

7

a witness had at first identified the attacker as female, and that no other witness had seen Pinkney at the bar. So he "withh[eld] a fact in his ken that any reasonable person would have known … was the kind of thing the judge would wish to know." *Id.* (cleaned up). In short, in his affidavit for the warrant application, Officer Frum recklessly disregarded the truth.

## B. As alleged, his misrepresentations and omissions tainted the probable-cause finding

Our analysis does not end there. To be constitutionally suspect, the misstatements and omissions must have been "material, or necessary, to the finding of probable cause." *Sherwood*, 113 F.3d at 399. To tell if the errors were material, we reconstruct the affidavit by "excis[ing] the offending inaccuracies and insert[ing] the facts recklessly omitted." *Wilson*, 212 F.3d at 789. Then we consider whether the revised facts and circumstances would have "suffic[ed] in themselves to warrant a reasonable person to believe" that Pinkney had committed the assault. *Id.* (internal quotation marks omitted).

To start, we remove the language that Freeland "recognized" Pinkney. Instead, the affidavit should have said only that Freeland thought Pinkney looked like the attacker. Next, we add the discrepancy. That makes the identification uncertain. We also add the other omitted exculpatory evidence, which shows that nothing corroborated Freeland's identification. And Officer Frum relied exclusively on Freeland's interview. So the reconstructed affidavit supports probable cause only if one uncertain eyewitness is enough.

We give an eyewitness identification significant weight. It satisfies probable cause unless it is unreliable or undermined

by exculpatory evidence. *Id.* at 790. There can be probable cause even if there is "some 'unreliability or exculpatory evidence.'" *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 478 (3d Cir. 2016) (quoting *Wilson*, 212 F.3d at 790). But when, as here, a witness is the sole source of information, we "cast a brighter light" on his account to ensure that it is reliable enough. *Andrews*, 853 F.3d at 704.

Freeland's identification was not. Its method was flawed. He reviewed three curated photos in which Pinkney was the only black man. That homemade photo array was suggestive. *See Dufort v. City of New York*, 874 F.3d 338, 348 (2d Cir. 2017).

Although we may still credit a tainted witness identification, it must be reliable. *Neil v. Biggers*, 409 U.S. 188, 198–99 (1972). To decide whether a suggestive witness identification is admissible at trial, we consider (1) how much opportunity he had to view the criminal during the crime, (2) how attentive he was, (3) how accurately he had described the criminal in the past, (4) how certain he was, and (5) how much time passed between the crime and the identification. *Id.* at 199–200. We apply those same factors to decide if a suggestive witness identification is reliable enough to support an arrest warrant.

None of these factors favors reliability here. Officer Frum never asked Freeland about how well he could see the assault or how much attention he was paying. His only questions were conclusory or leading. And Freeland's general description of a black man with braids did not match Pinkney. Plus, Freeland expressed uncertainty, saying only that Pinkney "look[ed] an awful lot like" the attacker. App. 648. Finally, several days

passed between the assault and the interview. Because Freeland's identification was neither reliable nor corroborated, it was not enough to show probable cause.

A police officer may not put on blinders and then claim ignorance. A single witness identification, without more, must have at least basic signs of reliability to amount to probable cause. That bar is not high; either corroboration or an appropriate witness interview may suffice. But based on the facts alleged, neither happened here. So Officer Frum violated Pinkney's Fourth Amendment rights by arresting him without probable cause.

### III. NO REASONABLE OFFICER WOULD HAVE FOUND PROBABLE CAUSE

Pinkney's right not to be arrested without probable cause was clearly established. *Andrews*, 853 F.3d at 705. So was his right not to be prosecuted without probable cause. *Id.* And no reasonable officer would have covered up a lack of probable cause by recklessly disregarding the truth in an affidavit. *Lippay v. Christos*, 996 F.2d 1490, 1504 (3d Cir. 1993). A reasonable officer thus would have known that Officer Frum's alleged conduct was unlawful.

\* \* \* \* \*

Probable cause requires enough evidence—one obviously unreliable, uncorroborated witness is not enough. According to the pleadings, Officer Frum exaggerated and hid facts to manufacture probable cause. That was wrong. So we will affirm and let this case proceed.

10