**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2873
_____

KOBE PINKNEY,
Appellant

v.

MEADVILLE, PENNSYLVANIA;  PATROLMAN JARED FRUM;
ALLEGHENY COLLEGE; DUNCAN FREELAND; JOE HALL
_____

On Appeal from the United States District Court for the
Western District of Pennsylvania
(District Court No. 1:19-cv-00167)
District Court Judge: Hon. Richard A. Lanzillo
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 16, 2025

(Filed September 22, 2025)

Before:  RESTREPO, McKEE, and RENDELL, *Circuit Judges*.
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**RENDELL**, *Circuit Judge.*

This case revolves around the arrest of Kobe Pinkney, a student at Allegheny College, for an assault on another student, Rhett Happel. Pinkney sued multiple defendants based on their conduct prior to, during, and following the arrest. The District Court dismissed the claims against all of the defendants other than the arresting officer.[1] Pinkney appeals from those dismissals.

I.[2]

Late one Saturday night at a college bar in Meadville, Pennsylvania, Rhett Happel was badly beaten. Meadville Police Officer Jared Frum saw two students carrying Happel after the incident and noticed that Happel's left eye was swollen shut, so he asked what happened. Happel and his friends were unsure of who assaulted Happel, but one of them said he believed the assailant punched Happel because they thought Happel drugged a woman who was found unconscious in the bar's bathroom the previous night. And

---

[1] The District Court held that Officer Frum did not have probable cause to arrest Pinkney and that he was not entitled to qualified immunity. We affirmed. *See Pinkney v. Meadville, Pennsylvania*, 95 F.4th 743, 750 (3d Cir. 2024). Pinkney eventually settled with Frum and other municipal officials and voluntarily dismissed the claims against them.

[2] The following facts are from Pinkney's First and Second Amended Complaints ("FAC" and "SAC"), which we take as true at this stage, while drawing all reasonable inferences in Pinkney's favor. *Keystone Redevelopment Partners, LLC v. Decker*, 631 F.3d 89, 95 (3d Cir. 2011). The FAC and SAC were not included in the record on appeal, but they are accessible from the District Court's docket, so we may take judicial notice of them. Fed. R. Evid. 201(b)(2), (c)(1); *Bunn v. Perdue*, 966 F.3d 1094, 1096 n.4 (10th Cir. 2020); *Ray v. Lara*, 31 F.4th 692, 697 n.4 (9th Cir. 2022). We also may consider exhibits attached to the complaint, including the news articles on Pinkney's arrest. *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

Happel told Frum that Jared Shaw (the woman's boyfriend) had threatened him the night of the attack.

As part of his investigation, Officer Frum interviewed Duncan Freeland, another Allegheny College student. Frum later applied for, and obtained, a warrant to arrest Appellant Kobe Pinkney, who (at all relevant times) was also an Allegheny College student. Appellee William Merchbaker, a sergeant in Allegheny College's Department of Public Safety, helped law enforcement by removing Pickney from class so that Frum could arrest him. As it turned out, there was not probable cause to arrest Pinkney, and Frum was only able to obtain the arrest warrant because he misrepresented Freeland's statements.

Pinkney alleges that the investigation and arrest were racially motivated because Frum did not investigate or arrest Shaw, the white student who threatened Happel hours before the assault, and instead focused on him (Pinkney), who is African American. Pinkney also alleges that Appellee Joe Hall, the Allegheny College Director of Student Conduct and Development, conspired with Frum and Freeland to "frame" him for the assault because Hall had previously "targeted and or profiled" Pinkney by, among other things, searching his dorm for marijuana and eavesdropping on him. SAC ¶¶ 84, 68.

Soon after Pinkney's arrest, many witnesses came forward with exculpatory evidence. The charges against Pinkney were dropped about one month after his arrest. At that time, ADA DiGiacomo issued a public statement that Pinkney nevertheless remained a suspect in the investigation.

3

Meanwhile, Appellee Meadville Tribune (a local newspaper owned by Appellee CNHI, LLC) published two articles about these events, which were written by Appellee Keith Gushard (a reporter for Meadville Tribune). First, on April 15, 2019, the Tribune published an article about Pinkney's arrest, which discussed the charges against him and included his home address. Next, on May 15, 2019, the Tribune published an article stating that the charges had been withdrawn and repeating the ADA's public statement that Pinkney nevertheless remained a suspect.

Based on these events, Pinkney brought state and federal claims against Allegheny College, William Merchbaker, Duncan Freeland, Joe Hall ("Allegheny College Defendants") and the Meadville Tribune, CNHI, LLC, and Keith Gushard ("Media Defendants"). Upon the parties' motions, the court dismissed all claims against these defendants.

Pinkney challenges the District Court's dismissal of the following claims: (1) unlawful seizure against Merchbaker; (2) Title VI and equal protection against Hall; (3) negligent hiring, supervision, and retention against Allegheny College; (4) invasion of privacy (by way of false light and intrusion upon seclusion) against the Media Defendants; and (5) intentional infliction of emotional distress against all Defendant-Appellees.

## II.

The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1332, and 1367(a). We have jurisdiction under 28 U.S.C. § 1291 and "we always have jurisdiction to

4

determine our jurisdiction." *Calderon-Rosas v. Att'y Gen. U.S.*, 957 F.3d 378, 384 (3d Cir. 2020) (citation modified).

We review de novo the District Court's decision to grant Defendants' Rule 12(b)(6) motion to dismiss, accepting all factual allegations in the complaint and drawing all reasonable inferences in favor of the non-moving party. *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021). To survive a Rule 12(b)(6) motion to dismiss, the complaint must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## III.

### A. Unlawful seizure claim against Merchbaker

As a threshold matter, the Allegheny College Defendants urge that Pinkney may not challenge the District Court's dismissal of his § 1983 unlawful seizure claim against Merchbaker, because the order that dismissed that claim was not mentioned in his notice of appeal. Appellees are correct that, as a formal matter, Pinkney has not appealed from the order dismissing this claim. The notice of appeal lists the District Court's April 27, 2020 and January 11, 2021 orders, but the court dismissed Pinkney's unlawful seizure claim against Merchbaker in an order filed on April 3, 2020. The Allegheny College Defendants present this as a waiver issue, but we have considered issues with notices of appeal to be jurisdictional. *See, e.g.*, *R & C Oilfield Servs. LLC v. Am. Wind Transp. Grp. LLC*, 45 F.4th 655, 661 (3d Cir. 2022). Ultimately, though, we see no jurisdictional

5

problem, as the order dismissing the unlawful seizure claim against Merchbaker merges

with the orders listed in the notice of appeal under Federal Rule of Appellate Procedure

3(c)(4).

Strictly speaking, we only have jurisdiction to review the judgments listed in the

notice of appeal. That said, we have explained:

> [W]e liberally construe notices of appeal . . . and exercise jurisdiction over
> other [unlisted] judgments where (1) there is a connection between the
> specified and unspecified orders; (2) the intention to appeal the unspecified
> order is apparent; and (3) the opposing party is not prejudiced and has a full
> opportunity to brief the issues.

*Pension Tr. Fund for Operating Eng'rs v. Mortg. Asset Securitization Transactions, Inc.*,

730 F.3d 263, 269 (3d Cir. 2013) (citation modified).[3] Here, (1) the April 27, 2020 order

listed on the notice of appeal is connected to the April 3, 2020 unlisted order (the April 3

order dismissed all federal claims and declined to exercise supplemental jurisdiction over

all state claims, then the April 27 order dismissed the state claims); (2) Pinkney devotes

over ten pages of his brief to arguing that the District Court erred in dismissing his

unlawful seizure claim against Merchbaker; and (3) the Allegheny College Defendants

---

[3] *Pension Tr. Fund* predates the 2021 amendments to Rule 3, but those amendments
do nothing to undermine, and indeed their philosophy supports, the view
that, even where it could be argued that the appellant failed to comply with
the established rules, courts may apply the principle that the notice of
appeal should be liberally construed and may infer the appellant's intent to
include the challenged order in the appeal in the light of surrounding
circumstances.
16A Charles Alan Wright, Arthur R. Miller & Catherine T. Struve, *Federal Practice and
Procedure* § 3949.4 (5th ed. 2023) (footnote omitted).

respond to those arguments on the merits. Accordingly, we will exercise jurisdiction over the District Court's April 3, 2020 dismissal of Pinkney's unlawful seizure claim.

The District Court dismissed Pinkney's claim against Merchbaker because it concluded that Merchbaker was entitled to qualified immunity. We agree that a reasonable officer in Merchbaker's position—that is, an officer asked to help execute a facially valid warrant—would have acted as Merchbaker did. Pinkney has not persuaded us otherwise.[4] *Cf. Showers v. Spangler*, 182 F.3d 165, 174 (3d Cir. 1999) (holding officers entitled to qualified immunity where they "did participate in the illegal search" but "participated under [another officer's] direct operational control and the record discloses nothing to suggest that any of them knew that [the other officer] was exceeding his authority").

### B. Title VI and equal protection claims against Hall

Next, Pinkney challenges the District Court's dismissal of his Title VI and equal protection claims against Hall.[5] The District Court did not err in dismissing these claims.

---

[4] By failing to raise it in his appellate briefs, Pinkney has forfeited any argument that Merchbaker, a private party acting on behalf of the state, is not entitled to raise a qualified immunity defense. *See Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 145–47 (3d Cir. 2017) (arguments not developed in opening brief are forfeited); *Richardson v. McKnight*, 521 U.S. 399, 404, 408 (1997) (discussing when a private state actor is entitled to qualified immunity); *see also Warman v. Mount St. Joseph Univ.*, No. 24-3042, 2025 WL 2017233, at *9 (6th Cir. July 18, 2025) ("[I]t is unclear whether Koopman and Koo are entitled to raise a qualified immunity defense as privately employed campus police officers.").

[5] Appellees make arguments related to Pinkney's Tile VI and equal protection claims against *all* Allegheny College Defendants, but Pinkney has forfeited any argument that the District Court erred in dismissing these claims against anyone except for Hall. *Barna*, 877 F.3d at 145–47.

First, individuals cannot be held liable under Title VI. *See, e.g.*, *Shotz v. City of Plantation*, 344 F.3d 1161, 1170 n.12 (11th Cir. 2003); *Buchanan v. City of Bolivar*, 99 F.3d 1352, 1356 (6th Cir. 1996). Second, the District Court correctly concluded that Hall's challenged conduct was not state action. Hall is a private party employed by a private university. And Pinkney does not allege facts from which we can plausibly infer that Hall conspired with any state actors. *See Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980). Without state action, Pinkney's equal protection claim fails. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935 & n.18 (1982).

### C.  Negligent hiring, supervision, and retention claim against Allegheny College

Pinkney next challenges the District Court's dismissal of his claim for negligent hiring, supervision, and retention. While their elements differ slightly, negligent hiring, retention, and supervision all generally require a plaintiff to allege that they suffered an injury stemming from an employer's failure to reasonably ensure that their employees will not harm third parties. *See Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 487–89 (3d Cir. 2013). Pinkney has not identified any legally cognizable injury stemming from Allegheny's hiring, supervision, or retention of Hall. He has not alleged that the searches of his dorm room, or any other action attributable to Hall, led to any disciplinary action or other harm. And though there *are* legally cognizable harms stemming from his arrest, he has not pled facts from which one can plausibly infer that Hall was involved in the investigation or arrest. Without any injury, Pinkney's negligence claims fail.

8

D. Invasion of privacy claims against Media Defendants

In Pennsylvania, "[t]ort claims based on invasion of privacy can be one of four types: 1) intrusion upon seclusion, 2) appropriation of name or likeness, 3) publicity given to private life, and 4) publicity placing a person in a false light." *Santillo v. Reedel*, 634 A.2d 264, 266 (Pa. Super. Ct. 1993). Pinkney's First Amended Complaint urges that it was an invasion of privacy for the Media Defendants to include his private address in their article, implicating types (1) and (3) (intrusion upon seclusion and publicity given to private life).[6] It also urges that it was an invasion of privacy for the Media Defendants to suggest that Pinkney assaulted Happel in light of exculpatory evidence, implicating type (4) (publicity placing a person in a false light). The District Court concluded that all of Pinkney's theories of invasion of privacy failed. We agree.

Pinkney does not (and cannot) contest that the Media Defendants' articles reiterated information contained in public records. That fact dooms each of Pinkney's purported theories of liability. First, intrusion upon seclusion requires an "intentional intrusion on the seclusion of their private concerns which was substantial and highly offensive to a reasonable person." *McGuire v. Shubert*, 722 A.2d 1087, 1092 (Pa. Super. Ct. 1998). The Media Defendants did not intrude into a private place; they merely examined public records. *See* Restatement (Second) of Torts § 652B, cmt. c (1977)

---

[6] The FAC does not set forth a publicity given to private life claim, but the District Court opined that the alleged facts— that the Media Defendants had published Pinkney's home address—"probably correlate more closely to a claim of invasion of privacy for publication of private facts" than to intrusion upon seclusion. App. 29. For completeness, we too will discuss both intrusion upon seclusion and publicity given to private life.

("[T]here is no liability [for intrusion upon seclusion] for the examination of a public record concerning the plaintiff."). Next, publicity given to private life requires a plaintiff to show that publicity was given to "private facts." *Jenkins v. Bolla*, 600 A.2d 1293, 1296 (Pa. Super. Ct. 1992). However, "[a] fact contained within a public record is deemed a public fact," not a private one. *Id.* Lastly, in order for his false light theory of liability to succeed, Pinkney "must show that a highly offensive false statement was publicized by appellees with knowledge or in reckless disregard of the falsity." *Santillo*, 634 A.2d at 266. Parroting information from a public record does not amount to publicizing a "highly offensive false statement." *Id.* Pinkney is right that publicizing accurate statements can nevertheless give rise to a false light claim where "the implication of the communication as a whole [i]s false." *Larsen v. Phila. Newspapers, Inc.*, 543 A.2d 1181, 1189 (Pa. Super. Ct. 1988) (quoting *Dunlap v. Phila. Newspapers, Inc.*, 448 A.2d 6, 15 (Pa. Super. Ct. 1982)). But the District Court did not err in concluding that neither article implies Pinkney's guilt. Accordingly, each type of invasion of privacy liability Pinkney puts forth fails. The District Court correctly dismissed these claims.

## E.  Intentional infliction of emotional distress claims

Finally, we agree with the District Court that Pinkney has not stated a claim for intentional infliction of emotional distress against any of the Defendant-Appellees. None of the alleged conduct is "extreme and outrageous," and so the District Court was right to

dismiss these claims. *Britt v. Chestnut Hill Coll.*, 632 A.2d 557, 561 (Pa. Super. Ct. 1993).

IV.

For these reasons, we will affirm the District Court's orders dismissing Pinkney's claims with prejudice.